590 F.2d 1124
 48 A.L.R.Fed. 418, 192 U.S.App.D.C. 8
 Agnes LAMONT, Gladys Bissonette, Ellen Moves Camp, Eugene
White Hawk, Marvin Ghost Bear, Edgar Bear Runner, Oscar Bear
Runner, Severt Young Bear, Rachel White Dress, Helen Red
Feather, Eddie White Dress, Vicki Little Moon, Madonna
Gilbert, Lorelei Means and Carla Blakley, Appellants,
v.
Alexander HAIG, Lieutenant General, United States Army, et al.
 No. 75-2006.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 20, 1976.
Decided Oct. 16, 1978.
 
 David E. Engdahl, Denver, Colo., with whom Terrance A. Sidley, Alexandria, Va., was on the brief, for appellants.
 Stanley Dalton Wright, Atty., Dept. of Justice, Washington, D. C., with whom Robert L. Keuch, Edward S. Christenbury and Thaddeus B. Hodgdon, Attys., Dept. of Justice, Washington, D. C., were on the brief, for appellees.
 Before BAZELON, TAMM and ROBINSON, Circuit Judges.
 Opinion for the Court filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge.
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge:
 
 
 1
 Appellants instituted suit to recover damages allegedly flowing from the deployment and utilization of Army and Air Force personnel for law-enforcement purposes pursuant to a conspiracy by appellees, present or past officers or employees of the United States.[1] The episode complained of took place in and around the Village of Wounded Knee, South Dakota, on the Pine Ridge Indian Reservation, from February until May of 1973. Appellants assert that the events that transpired then and there gave rise to an implied civil cause of action under the Fifth Amendment's Due Process Clause and 18 U.S.C. § 1385, which penalizes criminally the use of elements of the Army or Air Force to execute the laws, absent express constitutional or statutory authority.[2] The District Court dismissed the action for lack of venue[3] under 28 U.S.C. § 1391,[4] and expressly declined to rule on other procedural objections advanced by appellees.[5]
 
 
 2
 We hold that Section 1391(e) conferred venue only with respect to those appellees who retained positions in the Federal Government at the time appellants' suit was commenced.[6] We find, however, that ambiguity in appellants' complaint precludes determination of whether Section 1391(b) bestows venue over claims against the remaining appellees.[7] Consequently, we remand to permit amendments to the complaint and to enable the District Court to reconsider its ruling in light of the clarification to be afforded thereby.[8]
 
 I. SECTION 1391(e) VENUE
 In relevant part Section 1391(e) provides:
 
 3
 A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority . . . may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers (or) employees . . . were not a party.
 
 
 4
 The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.[9]
 
 
 5
 Very recently, in Briggs v. Goodwin,[10] we construed this provision as encompassing suits for money damages against federal officers who had acted under color of law though in excess of legal authority. In Briggs, the defendants all held federal posts at the time suit was filed, as well as when the cause of action arose.[11] In the case at bar, the constitutional and statutory violations charged were allegedly perpetrated by appellees while they were federal incumbents and were acting as such under color of their official authority.[12] The similarity ends at this point, however, for prior to commencement of appellants' action, several of the 14 appellees withdrew from federal service. Whether that occurrence renders Section 1391(e) inapplicable to them though there is no venue problem as to the others is the question we must first address.
 
 A. The Statutory Text
 
 6
 Our quest begins with a close look at the language of Section 1391(e), and several of its ramifications become quite readily apparent. It has no application unless at least one defendant to the action[13] is either (a) "an officer or employee of the United States or (some) agency thereof,"[14] or (b) "an agency of the United States"[15] or (c) "the United States" itself.[16] Moreover, if venue is predicated upon the presence of a federal officer or employee as a defendant, he must, as we have indicated, have "act(ed) in his official capacity or under color of legal authority."[17] If a defendant is a federal officer or employee who has taken such action, or is the United States or one of its agencies, and no other statute requires otherwise,[18] the plaintiff may choose from among as many as three alternative forums where venue is proper. The first is "where a defendant in the action resides."[19] The second is where "the cause of action arose."[20] The third is where "any real property involved in the action is situated"[21] or, if none is involved, where "the plaintiff resides."[22]
 
 
 7
 Section 1391(e) thus addresses the issue of venue proper as to the United States, a federal agency, or a federal officer or employee whose conduct meets the statutory specifications. The section makes clear, moreover, that "additional persons may be joined as parties to any such action"[23] an action against a federal defendant just described but its instruction regarding venue with respect to "(a)dditional persons" is quite different. For them it is necessary to satisfy "such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party."[24] So, while Section 1391(e) has provided specially for and, indeed, has broadened[25] venue vis-a-vis the federal defendants it designates, the conditions conferring venue as to an "(a)dditional person ( )" must also exist before that person may be joined in the litigation.[26] It follows that if suit is sought to be maintained not only against a federal defendant embraced within Section 1391(e) but also against an "(a)dditional person( )," there must be proper venue as specified in the pertinent statutes as to each.[27]
 
 
 8
 Aside from venue, there may of course be other problems for the plaintiff in a suit against several defendants, some of whom are federal officers. Joinder of "(a)dditional persons" must conform to standard practice,[28] and it goes without saying that personal jurisdiction over each defendant is indispensable to in personam actions. Save in one respect, Section 1391(e) itself governs neither of these matters; on the contrary, it makes clear that joinder of parties and service of process must observe relevant demands of the Federal Rules of Civil Procedure.[29] The sole exception is that in cases wherein it applies, "the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought."[30]
 
 
 9
 Section 1391(e), fully analyzed, emerges as a provision according federal agencies and servants special treatment for venue purposes treatment unlike that extended to any other litigant. And the statutory language indicates that its unique venue specifications regarding individual defendants are limited to those enjoying federal office or employment when initially sued. One searches Section 1391(e) in vain for even so much as a hint of any congressional desire to widen venue or ameliorate service of process in suits against those whose federal incumbency is a thing of the past. As "we are not at liberty to act in (Congress') stead,"[31] we must construe Section 1391(e) as its terms apparently demand absent evidence of a contrary legislative intent or a showing that adherence to a natural reading of the statutory language will produce a result at variance with the policy of the legislation as a whole.[32]
 
 B. The Legislative History
 
 10
 Less than striking is the discovery that nothing in the legislative history of Section 1391(e) specifically indicates that its provisions were meant to apply to suits filed against former federal personnel. In the committee reports and during debate in both Houses, reference was commonly made to federal officers and employees, but in no instance was coverage of past jobholders explicitly addressed. It is surprising that if Section 1391(e) was actually intended to reach bygone federal servants, some congressional articulation of that purpose did not eventuate. For "(t)he construction urged by (appellants) would potentially subject a retired government official to suit in any federal court in the country,"[33] and it seems "inconceivable that Congress would so substantially broaden the venue provision applicable to every individual once employed by the federal government without comment."[34]
 
 
 11
 To be sure, Congress did outline the legislation's broad objectives, and principal among the congressional aims was provision of a "readily available, inexpensive judicial remed(y) for the citizen who is aggrieved by the workings of Government."[35] By expanding venue and easing the rigors of process-service requirements in suits against federal officials, Congress certainly advanced that goal considerably. It does not necessarily follow, however, that Congress meant to go further and "provide a net that could draw everyone connected with a governmental action into litigation in a particular district. . . . "[36] We are mindful that legal representation at governmental expense is frequently, though discretionarily, extended to those who were in federal employ in the past.[37] But, counsel fees aside, defense of a damage action is hardly a desired experience, and its situs in a distant forum may well entail an appreciable disruption of the defendant's ongoing affairs.[38] A congressional determination to treat burdens of that magnitude as incidents of current federal service is not readily transferable to actions against those who have shed the mantel of federal office.[39]
 
 C. The Sum of Relevant Considerations
 
 12
 Confronted, then, with a relatively unambiguous statute, an absence of any specific indication of congressional intent to deny erstwhile federal officials the venue protection traditionally afforded defendants, and a general statutory design largely unadaptable to the context of the present controversy, our course seems relatively clear. However the inclusion of former federal officeholders within the purview of Section 1391(e) may fare on the scale of wisdom, the judgment was one for Congress to make, and we are constrained to acknowledge their exemption.
 
 
 13
 Our conclusion draws strong support from the well considered decision of the only other federal appellate court to address the issue thus far. Recently, in Driver v. Helms,[40] the First Circuit endorsed our determination in Briggs[41] that Section 1391(e) embraces actions for money damages but ruled that it does not extend to suits against those no longer in federal employment. Moreover, our holding today was foreshadowed, if not compelled, by one of our earlier pronouncements on the subject. We had occasion to construe Section 1391(e) in Relf v. Gasch,[42] which involved a transfer of civil litigation purportedly under authority of 28 U.S.C. § 1404(a) to a district "where it might have been brought."[43] The Relf plaintiffs pressed a claim for damages against present and past federal officials not only for misuse of authority but also for purely personal conduct.[44] Insofar as the plaintiffs sought relief for activities of the latter sort, we doubted that Section 1391(e) authorized venue in or service of process from the transferee court.[45] Even "apart from the inefficacy of process available in (the transferee) district for any defendant sued only in a purely personal role,"[46] we pointed out that the departure of some of the defendants from federal service prior to institution of suit "increas(ed) the likelihood that they were not amenable to service of process from" (the transferee) court.[47] Personal jurisdiction over the defendants in Relf could have rested only on Section 1391(e) or on the defendants' presence in the transferee district, and on the record the latter seemed improbable. We remanded the case to enable amendments to the complaint for the purpose of developing a more complete basis for determining whether venue was proper and personal jurisdiction existed in the transferee district.[48]
 
 
 14
 We now reaffirm Relf and explicitly hold that former federal officers and employees are beyond the reach of Section 1391(e).[49] That does not mean that the section is completely inapplicable to the case at bar, for one or more appellees remained in federal employ at the time appellants' suit was filed.[50] Section 1391(e) furnished venue for the action against those appellees and, as we have said, it specifically authorizes joinder of additional persons as parties if venue requirements otherwise applicable are met.[51] The only possible alternative basis for venue, however, is Section 1391(b), a general provision pertaining to civil litigation not resting jurisdictionally on diverse citizenship. Since the District court ruled broadly here that venue did not lie in the District of Columbia under Section 1391,[52] we must review the determination, implicit in its dismissal of appellants' lawsuit, with respect to Section 1391(b).
 
 II. VENUE UNDER SECTION 1391(b)
 In Section 1391(b) Congress ordained:
 
 15
 A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.[53]
 
 
 16
 As some of those made defendants to this litigation did not reside in the District of Columbia, venue under Section 1391(b) is proper only if it is a district "in which the claim arose." At first blush that might appear to be a determination easy enough to make but, though simply phrased, this component of Section 1391(b) has sometimes proved puzzling in application for two principal reasons. In the first place, Congress did not supply any particular definition of the language "in which the claim arose," either in statutory text or in pertinent legislative history, and no black-letter rule is derivable from other legal contexts in which that phraseology is employed.[54] Perhaps more seriously, the reference to "The judicial district" in which the claim arose might suggest that only a single district can satisfy the statutory standard with respect to any given claim. Though resort to familiar common law theories might furnish a reasonable ground for selection of a particular district in uncomplicated tort or contract actions,[55] choice of a single district is a much more difficult undertaking when sophisticated multistate activities of relative complexity are in issue.[56]
 
 
 17
 The legislative history of Section 1391(b), by its very generality, is helpful in the resolution of the problem. The portion of Section 1391(b) extending venue to a district "in which the claim arose" was added by amendment in 1966,[57] and the resulting "enlargement of venue" was intended merely to "facilitate the disposition of . . . claims by providing, in appropriate cases, a more convenient forum to the litigants and the witnesses involved."[58] The legislative concern was pragmatic: Since the place where the claim arose is the situs of events important to the case, Congress undertook "to facilitate the administration of justice"[59] by permitting suit in a district where the litigation might more handily progress.[60]
 
 
 18
 This practical orientation of Section 1391(b), then, counsels against adherence to mechanical standards in its application.[61] Rather, where "the claim arose" should in our view be ascertained by advertence to events having operative significance in the case, and a commonsense appraisal of the implications of those events for accessibility to witnesses and records.[62] And, though a proliferation of permissible forums is staunchly to be avoided,[63] it is evident that the often unfruitful pursuit of a single locality as the one and only district in which the claim arose is not needed to ensure the efficient conduct of the litigation. Not surprisingly, then, courts in some number have construed Section 1391(b) as conferring venue in a district where a substantial portion of the acts or omissions giving rise to the actions occurred, notwithstanding that venue might also lie in other districts.[64] We endorse that interpretation wholeheartedly. So long as the substantiality of the operative events is determined by assessment of their ramifications for efficient conduct of the suit[65] an important step upon which we would unfailingly insist loyalty to the objectives of Section 1391(b) will be amply preserved.[66] We come, then, to the question whether the case at bar can pass muster on that basis.
 
 
 19
 Appellants seek damages for depredations assertedly inflicted in violation of 18 U.S.C. § 1385[67] and the Due Process Clause of the Fifth Amendment. They aver an appropriation of military equipment and a deployment of military personnel for the purpose of executing the laws in and around the Village of Wounded Knee.[68] Consonantly with the principles we have delineated, Section 1391(b) venue of appellants' claims would lie in the District of Columbia if appellees' liability expectably could be established in substantial part by proof of acts or omissions occurring here. Success in that endeavor would depend, however, upon appellants' ability to demonstrate proper venue with respect to each cause of action[69] and each appellee.[70]
 
 
 20
 Appellants' complaint makes evident that in some appreciable measure defendants' allegedly unlawful activities happened in South Dakota. Indeed, Wounded Knee will long be remembered for the notorious conflagration occurring there. But appellants tell us that events having a major role in the putatively illegal operations took place in the District of Columbia. In their brief, they state that "Washington was 'command central' for the Wounded Knee seige (Sic )";[71] they insist that "(i)t was there that the conspiracy for execution of that scheme was developed(;) (i)t was from Washington that the critical orders, authorizations, and instructions issued throughout the seige (Sic ), and it was to Washington that the principal on-site officials periodically returned for consultation and strategy sessions with the officials who held in their Washington offices the ultimate operational control."[72]
 
 
 21
 Since appellants do not contend that the asserted conspiracy itself is civilly actionable,[73] the mere fact that the conspiracy was formulated in the District of Columbia may bear little significance for potential liability of any appellee whose own contribution to its consummation was confined wholly to South Dakota. At the moment, however, there is no call for a decision on Section 1391(b) venue with respect to any particular appellee. To begin with, the record on appeal, as we shall shortly see, lacks the information vital to individual determinations. Moreover, appellees who assertedly exercised "operational control" from the District of Columbia may be legally accountable even absent willful participation by others in South Dakota. Consequently, appellants might be able to establish liability on the part of "operational controllers" by proof that in substantial part their activities occurred within the District of Columbia.[74] That could be true even as to appellees whose connection with the Wounded Knee affair was limited to planning in the District of Columbia.
 
 
 22
 The problem, however, is that appellants' complaint does not explicate the claims indicated more comprehensively in their brief before this court. Although conferences and other conduct related to the conspiracy were chronicled in the complaint, with rare exception the locus of those activities does not appear. We thus are unable to appraise the tenor and extent or the implications for facility of this litigation of events that may have taken place in the District of Columbia, and the same disability may well have precluded a considered judgment by the District Court. In these circumstances, we think appellants should have the opportunity to amend the complaint to specify more clearly which of the asserted activities transpired here and which appellees are thought to have had a hand therein.[75] Then, in light of the amendments and our construction of Section 1391(b), the District Court can more soundly determine whether and to what extent venue may be proper under that section.[76]
 
 
 23
 The judgment dismissing appellants' suit for want of proper venue is accordingly vacated, and the case is remanded to the District Court for further proceedings consistent with this opinion.
 
 
 24
 So ordered.
 
 
 
 [1]
 The complaint alleged that all plaintiffs save one were residents or visitors at the Pine Ridge Indian Reservation during the time it was besieged by federal troops. Complaint P 6, Joint Appendix (J.App.) 6-7. Defendants were governmental officials assertedly responsible for the presence of the federal force at the reservation. Complaint PP 1-5, J.App. 3-5
 
 
 [2]
 "Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both." 18 U.S.C. § 1385 (1976)
 
 
 [3]
 Lamont v. Haig, No. 75-271 (D.D.C.1975) (unpublished order). See note 5 Infra
 
 
 [4]
 28 U.S.C. § 1391 (1970), as amended by Act of Oct. 21, 1976, Pub.L. No. 94-574, § 2, 90 Stat. 2721-2722, and Act of Oct. 21, 1976, Pub.L. No. 94-583, § 5, 90 Stat. 2897-2898. The only two provisions at all relevant to this litigation are quoted in text Infra at notes 9, 53
 
 
 [5]
 The District Court's order provided in full:
 This cause having come before the Court on defendants' motion to dismiss the complaint, and the Court having considered the pleadings, briefs, and affidavits filed herein, and it appearing to the Court that aside from difficult questions of personal and subject matter jurisdiction and the possible failure to state a claim upon which relief may be granted, venue in this Court under 18 (28) U.S.C. § 1391 is improper, and that the defendants' motion to dismiss the complaint should be granted, it is, therefore, by the Court this 31st day of July, 1975,
 ORDERED, that the defendants' motion to dismiss be, and the same hereby is, granted and that the action be, and the same hereby is, dismissed without prejudice.
 Lamont v. Haig, supra note 3, J.App. 26.
 Appellants protest that the District Court erred in dismissing their suit instead of transferring it under 28 U.S.C. § 1406(a) (1976) (providing for a transfer "to any district or division in which (the action) could have been brought" "if it be in the interest of justice") to the District of South Dakota, the jurisdiction other than the District of Columbia wherein substantial acts giving rise to the litigation occurred. Suit could have been brought in South Dakota when the complaint was filed, but the two-year period set by what appellants deem the applicable South Dakota statute of limitations had expired at the time of dismissal. See S.D. Compiled Laws Ann. § 15-2-15 (1967). Although appellants' point has merit, see Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-467, 82 S.Ct. 913, 915-916, 8 L.Ed.2d 39, 42 (1962); Briggs v. Goodwin, 186 U.S.App.D.C. 170, 172 n. 15, 569 F.2d 1, 3 n. 15 (1977), Petition for cert. filed, 46 U.S.L.W. 3694 (U.S. May 28, 1978); Cf. United States ex rel. Angell Bros., Inc. v. Cave Constr. Co., 250 F.Supp. 873, 874 (D.Mont.1966), our disposition of this appeal eliminates any present need to consider that issue.
 
 
 [6]
 Part I Infra
 
 
 [7]
 Part II Infra
 
 
 [8]
 Part II Infra
 
 
 [9]
 28 U.S.C. § 1391(e) (1976), as amended by Act of Oct. 21, 1976, Pub.L. No. 94-574, § 2, 90 Stat. 2721-2722. Appellants point particularly to subsection (1), permitting suit where "a defendant in the action resides" when venue under § 1391(e) is otherwise proper. At least one appellee, Wayne Colburn, Director of the United States Marshals Service, officially resided in the District of Columbia at the time suit was filed
 
 
 [10]
 Supra note 5
 
 
 [11]
 Defendant William H. Stafford, Jr., was a United States Attorney when the acts giving rise to the litigation occurred and at the time suit was commenced although, after the complaint was filed, he was appointed United States District Judge for the Northern District of Florida. See Briggs v. Goodwin, supra note 5, 186 U.S.App.D.C. at 171 & n. 1, 569 F.2d at 2 & n. 1; Reply Brief for Appellants at 4 n. *, Briggs v. Goodwin, supra note 4
 
 
 [12]
 Appellants' complaint asserts that appellees "did all of the acts alleged in this complaint purporting to do so, and purporting to have authority to do so, under law and by virtue of the offices that they held." Complaint P 4, J.App. 4
 
 
 [13]
 As originally enacted in 1962, § 1391(e) applied only to "(a) civil action in which Each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States. . . . " Act of Oct. 5, 1962, Pub.L. No. 87-748, § 2, 76 Stat. 744 (emphasis supplied). Most courts, however, did not give the words "each defendant" a literal reading. E. g., Natural Resources Defense Council v. TVA, 459 F.2d 255, 257 n. 3 (2d Cir. 1972) ("the 'each defendant' requirement applies only to those defendants as to whom plaintiffs seek to justify venue and personal jurisdiction under § 1391(e)"); Powelton Civic Home Owners Ass'n v. HUD, 284 F.Supp. 809, 832-834 (E.D.Pa.1968) (requirement that "each defendant" be a federal defendant refers only to defendants beyond the territorial limits of the forum). In 1976, Congress amended § 1391(e) to make plain that it extends to litigation in which "a defendant" is a federal agency, officer or employee though all defendants may not be. Act of Oct. 21, 1976, Pub.L. No. 94-574, 90 Stat. 2721. The factor precipitating the change was the susceptibility of the 1962 language to a construction excluding joinder of nonfederal defendants. S.Rep. No. 94-996, 94th Cong., 2d Sess. 17-18 (1976); H.R.Rep. No. 94-1656, 94th Cong., 2d Sess. 18-19 (1976), reprinted in (1976) U.S.Code Cong. & Admin.News, pp. 6139-6140. See note 36 Infra. Given the expansionistic purpose underlying § 1391(e), see text Infra at note 35, we must assume at least an equal congressional concern respecting joinder of multiple federal defendants
 
 
 [14]
 See text Supra at note 9
 
 
 [15]
 See text Supra at note 9. The term "agency" means "any department, independent establishment, commission, administration, authority, board, or bureau of the United States, or any corporation in which the United States has a proprietary interest." S.Rep. No. 1992, 87th Cong., 2d Sess. 4 (1962), reprinted in (1962) U.S.Code Cong. & Admin.News, pp. 2784, 2787
 
 
 [16]
 See text Supra at note 9
 
 
 [17]
 See text Supra at note 9. See also Briggs v. Goodwin, supra note 5, 186 U.S.App.D.C. at 174, 569 F.2d at 5; Relf v. Gasch, 167 U.S.App.D.C. 238, 241 n. 15, 511 F.2d 804, 807 n. 15 (1975); Paley v. Wolk, 262 F.Supp. 640, 643 (N.D.Ill.1965), Cert. denied, 386 U.S. 963, 87 S.Ct. 1031, 18 L.Ed.2d 112 (1967); Chase Savs. & Loan Ass'n v. Federal Home Loan Bank Bd., 269 F.Supp. 965, 967 (E.D.Pa.1967)
 
 
 [18]
 See text Supra at note 9. See also S.Rep. No. 1992, Supra note 15; Natural Resources Defense Council v. TVA, supra note 13, 459 F.2d at 258-259; Leber v. Canal Zone Cent. Labor Union, 383 F.2d 110, 113 n. 3 (5th Cir. 1967), Cert. denied, 389 U.S. 1046, 88 S.Ct. 769, 19 L.Ed.2d 838 (1968); Paley v. Wolk, supra note 18, 262 F.Supp. at 642
 
 
 [19]
 28 U.S.C. § 1391(e)(1) (1976), quoted in text Supra at note 9. What controls is the official residence of the federal defendant where the official duties are performed and not the personal residence of an individual who is a defendant. Tatum v. Laird, 144 U.S.App.D.C. 72, 75, 444 F.2d 947, 950 (1971); Nestor v. Hershey, 138 U.S.App.D.C. 73, 90, 425 F.2d 504, 521 (1969); Stroud v. Benson, 254 F.2d 448, 451 (4th Cir.), Cert. denied, 358 U.S. 817, 79 S.Ct. 28, 3 L.Ed.2d 59 (1958); Misko v. United States, 77 F.R.D. 425, 429 (D.D.C.1978); see also 1 J. Moore, Federal Practice P 0.142(5-1-2), at 1396 (2d ed. 1948)
 
 
 [20]
 28 U.S.C. § 1391(e)(2) (1976), quoted in text Supra at note 9. See generally 15 C. Wright, A. Miller & E. Cooper, Federal Practice § 3806 (1976)
 
 
 [21]
 28 U.S.C. § 1391(e)(3) (1976), quoted in text Supra at note 9. See McKenna v. Udall, 135 U.S.App.D.C. 335, 340, 418 F.2d 1171, 1176 (1969); Pruess v. Udall, 123 U.S.App.D.C. 301, 303, 359 F.2d 615, 617 (1965); Dredge Corp. v. Penny, 338 F.2d 456, 464 (9th Cir. 1964)
 
 
 [22]
 28 U.S.C. § 1391(e)(4) (1976), quoted in text Supra at note 9. See McEachern v. United States, 321 F.2d 31, 33 (4th Cir. 1963); Ellingburg v. Connett, 457 F.2d 240, 241-242 (5th Cir. 1972); Delaware v. Bender, 370 F.Supp. 1193, 1199-1200 (D.Del.1974). As to multiple plaintiffs, compare, E. g., Smith v. Lyon, 133 U.S. 315, 317, 10 S.Ct. 303, 304, 33 L.Ed. 635, 636 (1889), and Manchester Modes, Inc. v. Schuman, 426 F.2d 629, 633 n. 7 (2d Cir. 1970), with Environmental Defense Fund v. Corps of Eng'rs, 325 F.Supp. 728, 732 (D.Ark.1971), and Candarini v. Attorney Gen., 369 F.Supp. 1132, 1135 (E.D.N.Y.1974)
 
 
 [23]
 See text Supra at note 9
 
 
 [24]
 See text Supra at note 9; note 36 Infra
 
 
 [25]
 Schlanger v. Seamans, 401 U.S. 487, 490 n. 4, 91 S.Ct. 995, 997 n. 4, 28 L.Ed.2d 251, 254 n. 4 (1971); Liberation News Serv. v. Eastland, 426 F.2d 1379, 1383-1384 (2d Cir. 1970)
 
 
 [26]
 "Section 1391(e) controls venue against the federal defendants, and other defendants may be joined if the venue is one that would be proper to them without regard to section 1391(e)." 15 C. Wright, A. Miller & E. Cooper, Federal Practice § 3815 (Supp.1978)
 
 
 [27]
 Blum v. Morgan Guar. Trust Co., 539 F.2d 1388, 1391 (5th Cir. 1976)
 
 
 [28]
 Nestor v. Hershey, supra note 19, 138 U.S.App.D.C. at 91, 425 F.2d at 572
 
 
 [29]
 See text Supra at note 9
 
 
 [30]
 See text Supra at note 9. See also note 27 Supra and accompanying text. As to the process-service aspects of § 1391(e), see 4 C. Wright & A. Miller, Federal Practice § 1107 (1969)
 
 
 [31]
 Briggs v. Goodwin, supra note 5, 186 U.S.App.D.C. at 179, 569 F.2d at 10
 
 
 [32]
 See, E. g., Driver v. Helms, 577 F.2d 147, 150 (1st Cir. 1978); Massachusetts Financial Servs., Inc. v. Securities Protector Investor Corp., 545 F.2d 754, 756 (1st Cir. 1976), Cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977)
 
 
 [33]
 Kipperman v. McCone, 422 F.Supp. 860, 877 (N.D.Cal.1976). This is so because § 1391(e) permits venue in, and service of process from, "any judicial district in which . . . the plaintiff resides if no real property is involved in the action." See text Supra at note 9
 
 
 [34]
 Kipperman v. McCone, supra note 33, 422 F.Supp. at 877; Cf. Laborer's Int'l Union v. NLRB, 186 U.S.App.D.C. 13, 20, 567 F.2d 1006, 1013 (1977) (congressional silence on important aspect of statutory coverage militates against inference of intention to alter status quo)
 
 
 [35]
 H.R.Rep. No. 1936, 86th Cong., 2d Sess. 3 (1960)
 
 
 [36]
 Driver v. Helms, supra note 32, 577 F.2d at 150. The legislative history of the 1976 amendment to § 1391(e) provides additional evidence that advancement of a plaintiff's interest in conveniently prosecuting claims based on official misconduct must be tempered to avoid hardship to defendants not employed by the United States. Prior to the amendment, as we have observed, § 1391(e) applied only when "each defendant" was a federal officer or employee. See note 13 Supra. Because adherence to that requirement would exempt actions involving nonfederal defendants otherwise subject to venue and personal jurisdiction in the forum district, compare Town of East Haven v. Eastern Airlines, 282 F.Supp. 507 (D.Conn.1968), with Green v. Laird, 357 F.Supp. 227 (N.D.Ill.1973), Congress amended the section to enable its application when "a defendant" is a federal officer or employee. See note 13 Supra. The Department of Justice objected to the bill as introduced because it " 'would permit any plaintiff to obtain venue against any private defendant by simply joining as a party to the action a Federal official over whom venue may be obtained under 28 U.S.C. section 1391(e).' " S.Rep. No. 996, Supra notes 13, 18, quoting Letter from Antonin Scalia, Assistant Attorney General, to Edward M. Kennedy, Chairman, Subcommittee on Ad. Practice and Procedure, U.S. Senate (May 10, 1976); H.R.Rep. No. 1656, Supra note 13, at 18 (same). So, "(t)o avoid any hardship or unfair disadvantage to private defendants that might result from subjecting them to plaintiff's broadened choice of venue under section 1391(e) as amended," S.Rep. No. 996, Supra note 13, at 18, the Senate Committee on the Judiciary amended the pertinent sentence of the bill to read as follows:
 Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure And with such other venue requirements as would be applicable if the United States or one of its officers, employees or agencies were not a party.
 Id. (emphasis supplied by the Committee). The Committee recognized that "(i)n effect, this will mean that a private defendant can only be sued in a venue where he could have been sued if the Government had not been a party. As a practical matter it will usually mean that the plaintiff will have to bring suit in the district where the defendant resides rather than in his own district." Id. Thus, under § 1391(e) as amended, a plaintiff distressed by official misconduct who sues both a federal and a nonfederal defendant who participated in the activity undergirding the lawsuit must press his claim in a district having venue with respect to the nonfederal defendant by authority other than § 1391(e), notwithstanding the procedural burden on vindication of the plaintiff's grievance.
 
 
 [37]
 See 28 C.F.R. pt. 50 (1977). When it is "in the interest of the United States," the Department of Justice will undertake the representation or pay for representation by a private attorney when a conflict of interest might otherwise ensue of former federal servants sued in an individual capacity for acts reasonably appearing to have been performed within the scope of the former employment. Id. See also 28 U.S.C. § 516 (1976). Defense of past personnel may well be less commonly compelled by governmental interest than defense of those currently employed simply because an adverse judgment might impact less on continuing governmental operations in the former context than in the latter
 
 
 [38]
 In Driver v. Helms, 74 F.R.D. 382 (D.R.I.1977), Rev'd, 557 F.2d 147 (1st Cir. 1978), the District Court had determined that "the greatest portion of effort required in defending This lawsuit will not require defendants to travel or undertake other actions interfering with their ongoing activities." Id. at 400 (emphasis supplied). That extension of § 1391(e) to reach defendants in one particular action would not result in significant impositions does not justify categorical inclusion of former federal jobholders in the class of defendants affected by that section
 
 
 [39]
 We need not ponder whether the same considerations of repose militate against § 1391(e) coverage of a defendant who, though in federal employ at the time suit is filed, holds a position distinctly different from that occupied at the time the acts or omissions complained of transpired. It may be that § 1391(e) is most naturally read as covering suits against a federal officeholder for activity in the selfsame office. See Driver v. Helms, supra note 32, 577 F.2d at 151 n. 11. We intimate no view in this regard, however, for the record is unclear as to whether the issue is directly involved in this case. The District Court will, of course, undertake appropriate inquiries on this score on remand
 
 
 [40]
 Supra note 32
 
 
 [41]
 Supra note 5
 
 
 [42]
 Supra note 17
 
 
 [43]
 28 U.S.C. § 1404(a) (1976)
 
 
 [44]
 All defendants had been federal servants; some had left governmental employment prior to commencement of suit. Relf v. Gasch, supra note 17, 167 U.S.App.D.C. at 242 n. 19, 511 F.2d at 808 n. 19
 
 
 [45]
 As a prerequisite to transfer under § 1404(a) venue must be proper in the transferee district with respect to every defendant and each claim for relief, Id. at 241, 511 F.2d at 807, and all defendants must have been amenable to process emanating from the transferee district at the time the action was initially filed, Id. at 241 n. 12, 511 F.2d at 807 n. 12
 
 
 [46]
 See Briggs v. Goodwin, supra note 5, 186 U.S.App.D.C. at 174-175, 569 F.2d at 6-7 (explaining Relf )
 
 
 [47]
 Relf v. Gasch, supra note 17, 167 U.S.App.D.C. at 242, 511 F.2d at 808
 
 
 [48]
 The concurring judge in Relf agreed with the majority that the separation from federal service of some of the defendants prior to the filing of the complaint made § 1391(e) inapplicable to them. Id. Because the prospect of properly serving those defendants depended upon their unlikely presence in the transferee district at the time of the activities in issue, the concurring opinion concluded that the "action against (them) probably could not be transferred." Relf v. Gasch, supra note 17, 167 U.S.App.D.C. at 242, 511 F.2d at 808. See also Briggs v. Goodwin, supra note 4, 186 U.S.App.D.C. at 176 n. 52, 569 F.2d at 7 n. 52
 
 
 [49]
 Accord, Driver v. Helms, supra note 32, 577 F.2d at 149-151; Kipperman v. McCone, supra note 33, 422 F.Supp. at 876-877; Wu v. Keeney, 384 F.Supp. 1161, 1168 (D.D.C.1974). Contra, United States v. McAninch, 435 F.Supp. 240, 245 (E.D.N.Y.1977); Lowenstein v. Rooney, 401 F.Supp. 952, 962 (E.D.N.Y.1975)
 Appellants' reliance on decisions construing the "doing business" requirement of 28 U.S.C. § 1391(c) (1970), E. g., Farmers Elevator Mut. Ins. Co. v. Carl J. Austad & Sons, Inc., 343 F.2d 7, 12 (8th Cir. 1965), and § 12 of the Clayton Act, 15 U.S.C. § 22 (1976), which refers to the place where a defendant "transacts business," E. g., Eastland Constr. Co. v. Keasbey & Mattison Co., 358 F.2d 777, 780 (9th Cir. 1965), to denote the time when the cause of action arose notwithstanding statutory use of the present tense is misplaced. The language of § 1391(e) and its legislative history reflect focused congressional attention on a discrete class of defendants to which former federal jobholders do not belong. Their inclusion in the category of defendants amenable to the expanded venue and lax service requirements of § 1391(e) subjects them to suit anywhere in the United States that a potential plaintiff might reside and accordingly threatens hardships Congress may never have intended to impose.
 By contrast, liberal interpretation of § 1391(c) and the Clayton Act accords with their legislative history, see Comment, Time of Venue Under Section 12 of the Clayton Act Refers to Time When Action Accrued, 65 Mich.L.Rev. 995 (1967); Cf. Comment, Venue: Then or Now? Section 22 of the Sherman Act, 115 U.Pa.L.Rev. 1007 (1967), and results in recognition of venue in only a limited number of jurisdictions just those in which the corporate defendant actually transacted business at the time the cause of action arose. And hardship resulting from geographical distance, while of concern in the context of natural defendants, is considerably less significant when corporate defendants are involved. See 1 J. Moore, Supra note 19, P 0.140(1.-1) at 1308-1309.
 
 
 [50]
 See note 11 Supra and accompanying text
 
 
 [51]
 See text Supra at notes 24, 26
 
 
 [52]
 See notes 4-5 Supra
 
 
 [53]
 28 U.S.C. § 1391(b) (1976)
 
 
 [54]
 Professor Moore has examined extensively the use of the phrase "where the claim arose" and has discerned no general agreement on its meaning in any context. He has cautioned that construction of the phrase for nonvenue purposes may not have any relevance to the venue question of "convenience of trial location." See 1 J. Moore, Supra note 19, P 0.142(5.-2) at 1427-1428
 
 
 [55]
 Compare Restatement, Conflict of Laws, § 377 (1934) (law of the place of the wrong the state wherein the last event necessary to make an actor liable for the alleged tort occurs governs tort action); Restatement, Contracts § 74 (1932) (contract action arises where last act necessary for formation of contract occurs)
 
 
 [56]
 See, E. g., Tefal, S. A. v. Products Int'l Co., 529 F.2d 495 (3d Cir. 1976); Commercial Lighting Prods., Inc. v. United States Dist. Ct., 537 F.2d 1078 (9th Cir. 1976); Ghazoul v. International Management Servs., Inc., 398 F.Supp. 307 (S.D.N.Y.1975); Scott Paper Co. v. Scott's Liquid Gold, Inc., 374 F.Supp. 184 (D.Del.1974); California Clippers, Inc. v. United States Soccer Football Ass'n, 314 F.Supp. 1057 (N.D.Cal.1970); Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp., 291 F.Supp. 252 (E.D.Pa.1968); Carter-Wallace, Inc. v. Ever-Dry Corp., 290 F.Supp. 735, 739 (S.D.N.Y.1968); Comment, Federal Venue: Locating the Place Where the Claim Arose, 54 Tex.L.Rev. 392 (1976) (Passim )
 
 
 [57]
 Act of Nov. 2, 1966, Pub.L. No. 89-714, § 1, 80 Stat. 1111
 
 
 [58]
 H.R.Rep. No. 1893, 89th Cong., 2d Sess. 2 (1966); accord, S.Rep. No. 1752, 89th Cong., 2d Sess. 1-2 (1966)
 Section 1391(a) was amended simultaneously, and to the same end. See Act of Nov. 2, 1966, Pub.L. No. 89-714, § 1, 80 Stat. 1111. The addition of the phrase "in which the claim arose" supplanted the earlier § 1391(f), which had provided:
 A civil action on a tort claim arising out of the manufacture, assembly, repair, ownership, maintenance, use, or operation of an automobile may be brought in the judicial district wherein the act or omission complained of occurred.
 Act of Dec. 23, 1963, Pub.L. No. 88-234, 77 Stat. 473. See also Act of Nov. 2, 1966, Pub.L. No. 89-714, § 2, 80 Stat. 1111 (repealing subsection (f)).
 Section 1391(f), as ultimately enacted, prevailed over an initial proposal that would have provided that "a civil action on a tort claim may be brought in the judicial district wherein the act or omission complained of occurred." H.R.Rep. No. 385, 88th Cong., 1st Sess. 1 (1963). With respect to the original bill, the House Committee on the Judiciary explained that the "extension of the venue provisions of Title 28 . . . will improve judicial administration" because, among other reasons, "often the records and the witnesses which and who are to produce the evidence in the court, will be from the local area wherein the tort occurred(;) (t)hus, greater convenience will be afforded as to the witnesses and it would also lesson costs to the litigants." Id. at 2; See S.Rep. No. 620, 88th Cong., 1st Sess. 1 (1963). Though passed by both Houses, see 109 Cong.Rec. 12154, 20601 (1963), the Senate requested that the bill be returned for further study, see 109 Cong.Rec. 20829 (1963) (remarks of Sen. Russell, expressing concern that the bill might have further implications in tort actions than "settl(ing) the jurisdiction where the witnesses (are) readily available"). It was subsequently amended and passed as Pub.L. No. 88-234, Supra.
 
 
 [59]
 Letter from Ramsey Clark, Deputy Attorney General, to Emanuel Celler, Chairman, Committee on the Judiciary, House of Representatives (Nov. 5, 1965), attached to and made part of S.Rep. No. 1752, Supra note 58, at 3
 
 
 [60]
 See text at note 58 Supra
 
 
 [61]
 See, E. g., cases cited Supra note 56
 
 
 [62]
 In some cases, testimony of nonparties and records or other evidence not in the parties' possession may be insignificant; in others, it may be most readily available in areas in which none of the principal events in issue in the suit occurred. In such situations, the forum court should not oppose the plaintiff's choice of venue if the activities that transpired in the forum district were not insubstantial in relation to the totality of events giving rise to the plaintiff's grievance and if the forum is generally convenient for all litigants. An additional, important consideration might be ensuring the existence of at least one forum wherein venue and personal jurisdiction requirements permit multiple-party litigation to proceed. See Brunette Mach. Works, Ltd. v. Kockum Indus., Inc., 406 U.S. 706, 710 n. 8, 92 S.Ct. 1936, 1939 n. 8, 32 L.Ed.2d 428, 431 n. 8 (1972); Transamerica Corp. v. Transfer Planning, Inc., 419 F.Supp. 1261, 1263 (S.D.N.Y.1976); Iranian Shipping Lines, S. A. v. Moraites, 377 F.Supp. 644, 647 (S.D.N.Y.1974)
 
 
 [63]
 See Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp., supra note 56:
 Here Congress was still interested in seeing to it that plaintiffs do not have virtually unlimited power to bring actions in any forum to "give plaintiffs free rein to haul defendants hither and yon at their caprice."
 
 
 [291]
 F.Supp. at 260, quoting United States v. National City Lines, Inc., 334 U.S. 573, 588, 68 S.Ct. 1169, 1177, 92 L.Ed. 1584, 1593 (1947). See also Transamerica Corp. v. Transfer Planning, Inc., supra note 62, 419 F.Supp. at 1263; Honda Assocs., Inc. v. Nozawa Trading, Inc., 374 F.Supp. 886, 889 (S.D.N.Y.1974)
 
 
 [64]
 E. g., Tefal, S. A. v. Products Int'l Co., supra note 56, 529 F.2d at 496-497; Gardner Eng'r Corp. v. Page Eng'r Co., 484 F.2d 27, 33 (8th Cir. 1973); Commercial Lighting Prods., Inc. v. United States Dist. Ct., supra note 56, 537 F.2d at 1080; see, E. g., Scott Paper Co. v. Scott's Liquid Gold, Inc., supra note 56, 374 F.Supp. at 190; United States v. Rundle, 371 F.Supp. 252, 254 (E.D.Pa.1974); Carter-Wallace, Inc. v. Ever-Dry Corp., supra note 56, 290 F.Supp. at 739. The "substantial part" construction has been urged by the American Law Institute as well. ALI Study of the Division of Jurisdiction Between the State and Federal Courts §§ 1303, 1314 (1969). See also Comment, Supra note 56
 A number of courts have adopted a weight-of-the-contacts test, first announced in Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp., supra note 56. See, E. g., ABC Great States, Inc. v. Globe Ticket Co., 310 F.Supp. 739 (N.D.Ill.1970); Ghazoul v. International Management Servs., Inc., supra note 56. Though, in principle, that test may permit selection of a single forum "in which the claim arose," the factors sometimes deemed determinative might well indicate the suitability of several such forums in other cases involving similar causes of action. See, E. g., Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp., supra note 56 (in antitrust action, venue would lie in any district in which injury occurred if some overt act pursuant to conspiratorial meetings took place in the district and it was a substantial element of the offense; conversely, if a meaningless and insignificant meeting of the conspirators took place in a district, venue would not exist there). Generally, the cases purporting to apply this standard have not illuminated how the contacts are to be weighed or when they are significant. See 15 C. Wright, A. Miller & E. Cooper, Federal Practice § 3806, at 36 (1976); Cf. Iranian Shipping Lines v. Moraites, supra note 62, 377 F.Supp. at 647 (rejecting version of test contemplating evaluation of specific calculus of contacts).
 
 
 [65]
 See note 62 Supra and accompanying text
 
 
 [66]
 We think this construction is consistent with the text and intent of § 1391(b). See 1 J. Moore, Supra note 19:
 (T)the language of both subsections (a) and (b) refer to "The district . . . in which The claim arose," lending some inference that the draftsmen assumed that every claim arises in some One district. Given the looseness with which "the" is sometimes used in statutes, however, this inference, while perhaps persuasive, is not compelling. As to the first "the," there is no reason to suppose that the draftsmen of the 1966 amendment gave it any thought, since they appear to have simply spliced in the phrase "or where the claim arose" in the fashion that would obviate the need to rewrite the subsection. Indeed there appears to be some question as to whether "the" was appropriate in subsection (a) as originally enacted, since "the judicial district where all plaintiffs or all defendants reside" does not refer to a single district, but to one, two, or none, as the case may be.
 P 0.142(5.-2), at 1431 (emphasis in original) (footnote omitted).
 The "substantial part" standard was expressly incorporated into the present § 1391(f), added by amendment in 1976, which concerns venue over actions against foreign states. Act of Oct. 21, 1976, Pub.L. No. 94-583, § 5, 90 Stat. 2897, providing:
 A civil action against a foreign state as defined in section 1603(a) of this title may be brought
 (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . .
 The House Committee on the Judiciary explained:
 This provision is analogous to 28 U.S.C. § 1391(e), which allows an action against the United States to be brought, Inter alia, in any judicial district in which "the cause of action arose." The test adopted, however, is the newer test recommended by the American Law Institute . . . which does not imply that there is only one such district applicable in each case.
 H.R.Rep. No. 1487, 94th Cong., 2d Sess. 31-32 (1976); accord, S.Rep. No. 1310, 94th Cong., 2d Sess. 31 (1976).
 The fact that amendments to § 1391(e) were pending in the same session before Congress but were not supplemented to include the "substantial part" language arguably indicates an intention to preserve a distinction between the standard of § 1391(f) and that of §§ 1391(a), (b), and (e). But the 1976 amendment to § 1391(e) was addressed to a very specific congressional concern, see note 36 Supra, and the amendment adding the present § 1391(f) was part of similarly specific legislation concerning the multi-district nature of suits against foreign sovereigns. See Act of Oct. 21, 1976, Pub.L. No. 94-583, 90 Stat. 2897. To boot, Congress was fashioning a completely new venue provision in § 1391(f) and in that posture opted for the ALI suggestion, so it is not surprising that the opportunity was not taken to amend the venue laws generally.
 
 
 [67]
 Quoted Supra note 2
 
 
 [68]
 See note 1 Supra and accompanying text
 
 
 [69]
 Relf v. Gasch, supra note 17, 167 U.S.App.D.C. at 241 n. 12, 511 F.2d at 807 n. 12; Jones v. Bales, 58 F.R.D. 453, 458 (N.D.Ga.1972), Aff'd, 480 F.2d 805 (5th Cir. 1973); 1 J. Moore, Supra note 19, P 0.142(4), at 1388. This requirement might be relaxed when parties and proofs for all causes of action are identical. See Relf v. Gasch, supra note 17, 167 U.S.App.D.C. at 241 n. 12, 511 F.2d at 807 n. 12, citing Laffey v. Northwest Airlines, Inc., 321 F.Supp. 1041 (D.D.C.1971), aff'd in part, vacated and remanded in part, 185 U.S.App.D.C. 322, 567 F.2d 429 (1976), Cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). See also 1 J. Moore, Supra note 19, P 0.140(5), at 1329
 
 
 [70]
 See ABC Great States, Inc. v. Globe Ticket Co., supra note 64, 310 F.Supp. at 743 (venue must be proper as to each defendant and will not be extended to defendants who could not be sued in forum district absent venue over coconspirators); Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp., supra note 56, 281 F.Supp. at 261-262 (same); 1 J. Moore, Supra note 19, P 0.140(1.-2), at 1311 ("venue is a privilege personal to each defendant")
 
 
 [71]
 Brief of Appellants at 13
 
 
 [72]
 Id
 
 
 [73]
 Reply Brief of Appellants at 16. Civil conspiracies ordinarily are not independently actionable. See Jones v. Bales, supra note 69. Nevertheless, the liability of a particular defendant might be proven by evidence of his participation in a civil conspiracy that was actually executed by co-conspirators. Witnesses and records necessary to establish that defendant's liability might be available in the district of his participation rather than the district wherein the scheme was effectuated
 
 
 [74]
 See text Supra at notes 61-66
 
 
 [75]
 Cf. Relf v. Gasch, supra note 17, 167 U.S.App.D.C. at 241-242, 511 F.2d at 807-808
 
 
 [76]
 We necessarily leave to the District Court on remand the determination whether the contacts with the District of Columbia alleged in the complaint, as it might be amended, betoken the convenience of litigating here. If it appears that appellants' proof may in fact only minimally concern activities that occurred here, then convenience might be promoted by litigating this case in South Dakota. If that emerges as the proper conclusion, then transfer pursuant to § 1406(a) might be considered. See note 5 Supra