**Janice CHANCELLOR, Plaintiff,**

v.

**Jimi Ann LAWRENCE, Edward T. Weaver, et al., Defendants.**

**No. 78C4496.**

United States District Court, N. D. Illinois, E. D.

Nov. 5, 1980.

Donald T. Bertucci, Chicago, Ill., for plaintiff.

Mary Joe Carroll, Barham, Bratton, Clark, Thomas, Winters & Shapiro, Austin, Tex., Edward T. Butt, Wildman, Harrold, Allen & Dixon, Aram Hartunian, Pressman & Hartunian, Chicago, Ill., Hilgers, Watkins & Hays, Austin, Tex., Richard Ryan, Sp. Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This cause is before the Court on motions of two of three sets of defendants to dismiss for lack of *in personam* jurisdiction and improper venue. The underlying controversy is a § 1983 action which alleges violations of plaintiff's constitutional rights under the First, Fourth, Eighth, Ninth and Fourteenth Amendments, breach of guardianship duties, professional malpractice and medical malpractice. Federal subject matter jurisdiction is premised on 28 U.S.C. § 1331, § 1332 and § 1343. It is submitted that the Court has pendant jurisdiction over the breach of duty and malpractice claims. For the reasons set forth herein, both jurisdictional and venue objections raised by defendants must be sustained. Accordingly, the motions are granted and the cause is dismissed as to those defendants.

## FACTUAL BACKGROUND

At age 12, plaintiff, Janice Chancellor, was determined to be a neglected minor by the Circuit Court of Cook County, Illinois, Juvenile Division, and adjudged a ward of the state. On June 26, 1970, Janice was committed to the care of the Illinois Department of Children and Family Services ("IDCFS") and Richard S. Layman, Guardianship Administrator at IDCFS, was appointed her legal guardian.

After a number of apparently unsuccessful experiences in private foster homes, the IDCFS, in early 1971, deemed it advisable to place Janice in the Meridell Achievement Center ("Meridell"), a residential group care facility located near Austin, Texas. Plaintiff arrived at Meridell on April 6, 1971. She was accompanied by Frankie Laird, her IDCFS caseworker, who spent the rest of that day processing Janice's admission and inspecting the facility. Ms. Laird, on behalf of IDCFS, also executed an individual placement agreement with Meridell for Janice's care.

Janice Chancellor was not the first child IDCFS had placed at Meridell. Rather, numerous wards had been sent to the Center prior to 1971 pursuant to a general written operating agreement. Under this general agreement, IDCFS would send a monthly check to Meridell, as reimbursement for the daily care provided to IDCFS placements during the preceding month, computed at the then applicable per diem rate. Vouchers or receipts supplied by Meridell indicate that over 100 IDCFS children were at Meridell at any one time during 1971, and Meridell received almost $800,000 for the care of these children.

In late 1971, while plaintiff was in residence at Meridell, she complained of abdominal pain. Plaintiff was taken to Meridell's regular outside pediatrician, Dr. Miles Sedberry, for treatment. Dr. Sedberry examined plaintiff and took X-ray photographs of her intestinal tract. These photographs indicated the possible presence of a calcium "mass" in Ms. Chancellor's abdomen. Dr. Sedberry thus referred plaintiff to Dr. George Tipton, a surgeon in Austin.

According to the complaint, Dr. Tipton examined plaintiff on November 2, 1971. On the basis of a rectal examination and pelvic X-rays, Dr. Tipton made a tentative diagnosis of ovarian "teratoma". Two weeks later, on November 15, 1971, Dr. Tipton advised officials at the Meridell Center of his findings. He noted that "teratoma ... may be very malignant," and rec-

ommended that an operation be performed for further diagnosis (since a positive diagnosis was not possible without a pathological examination) and possible removal of the "mass". Dr. Tipton requested that Meridell secure authorization to allow him to employ whatever surgical procedures he felt would be required in the operation. At a later date, the surgeon also requested permission to use the necessary anesthetic and pathological routines.

Consent for the operation and the related procedures was obtained by Meridell from plaintiff's guardian in Illinois at IDCFS. On November 23, 1971, an operation was performed by Dr. Tipton, assisted by Drs. Bailey and Pelphrey, in Austin, Texas. During the surgery a cyst was discovered in plaintiff's right ovary, which after subsequent pathological analysis was determined to be benign. However, for reasons which are wholly undetermined at this stage of the lawsuit, not only was Ms. Chancellor's right ovary extracted, but her left ovary, uterus and appendix were removed as well.

The complaint alleges that at no time prior to the surgery was plaintiff informed either of Dr. Tipton's pre–operative diagnosis or of the extent of the operation. Meridell's staff merely informed Ms. Chancellor that an appendectomy was to be performed. In May of 1972, about six months after surgery, plaintiff was removed from Meridell and transferred to Chicago State Hospital, a public mental institution in Illinois. While at this latter institution, Janice was informed that her ovaries and uterus had been removed and her procreative capacity eliminated.

On November 13, 1978, plaintiff filed the current action in federal district court against 13 individual defendants. For purposes of these motions, the defendants can be divided into three groups: (1) former officials at IDCFS ("The IDCFS defendants"); (2) those relevant officials of the Meridell clinic in Texas ("The Meridell De-

fendants"); and (3) the three Austin, Texas physicians who participated in and performed plaintiff's operation (The "Texas Physicians")[1]. There are six counts in the complaint alleging: (1) denial of the plaintiff's right to procreate; (2) denial of due process of law; (3) denial of plaintiff's right to treatment; (4) breach of guardianship duties; (5) professional malpractice; and (6) medical malpractice. Counts 1 through 3 are directed toward all defendants. Counts 4 and 5 are directed toward the IDCFS and Meridell Defendants, and Count 6 is alleged against the Texas Physicians only. Both the Texas Physicians and the Meridell Defendants have moved to dismiss herein. Since each group has raised different defenses and because *in personam* jurisdictional defenses are necessarily fact sensitive, the respective motions are discussed individually.

## DISCUSSION

■ Although it is not clear from plaintiff's brief, presumably she intends to assert Illinois jurisdiction under the "transacting business within the state" provision of Illinois long arm statute, Ill.Rev.Stat. Ch. 110 § 17(1)(a) (1980). The determination of *in personam* jurisdiction involves a two–tiered analysis both statutory and constitutional. However, since the legislative intent of the Illinois long–arm statute is to assert jurisdiction to the maximum extent permitted under the due process clause, *Hutter Northern Trust v. Door County Chamber of Commerce*, 403 F.2d 481 (7th Cir. 1968); *Nelson v. Miller*, 11 Ill.2d 378, 143 N.E.2d 673 (1957), the statutory and constitutional analyses are merged here.

The Supreme Court on numerous occasions has articulated the limits of *in personam* jurisdiction under the due process clause. *See e. g., World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Shaffer v. Heit-*

1. The "Meridell Defendants" are Wayne L. Lippold, former Administrator, Meridell Achievement Center, Inc.; Greg Cruickshank, former Assistant Administrator at Meridell; and Patricia Cruickshank, Chief Nurse at Meridell.

The "Texas Physicians" are George W. Tipton, M.D.; J. W. Bailey, M.D.; and Charles Pelphrey, M.D.

*ner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The thrust of these decisions is that sufficient "minimum contacts" must exist between the defendant and the forum state so that jurisdiction over non–residents does not violate "traditional concepts of fair play and substantial justice." *International Shoe Co. v. Washington, supra* at 316, 66 S.Ct. at 158. It is well settled that there is no specific formula for ascertaining which "contacts" will satisfy the constitutional minima. Rather, the court must examine the facts of each case in light of certain factors including the burden on the defendant, the forum's state's interest in adjudicating the dispute and the plaintiff's interest in obtaining effective relief. *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). *See also, Kulco v. Superior Ct.,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Certainly, a fundamental inquiry of the "minimum contacts" analysis is whether the non–resident defendant engaged in some act or conduct by which it may fairly be said that he invoked the benefits and protections of the law of the forum state. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Gelderman & Co., Inc. v. Dussault,* 384 F.Supp. 566, 571 (N.D.Ill. 1974); *Rosenthal & Co. v. Dodick,* 365 F.Supp. 847 (N.D.Ill.1973).

## PERSONAL JURISDICTION OVER THE TEXAS PHYSICIANS

The facts, as presented to the Court, fail to suggest sufficient minimum contacts between the Texas physicians and Illinois to sustain personal jurisdiction in this forum. The physicians' contacts with Illinois can only be described as severely attenuated. All three reside and practice only in Texas and performed all services for plaintiff in that state. There is no indication that any of the doctors dealt directly with the IDCFS in either Illinois or Texas. Rather all contacts, payments, communications and services were rendered to and through the Meridell Center, a Texas institution.

■ Of the three physicians, Dr. Tipton may be viewed as having the greatest possible contact with Illinois. He, however, did not regularly treat Meridell's patients (indeed, Janice Chancellor was his only patient from the Center). Moreover, Dr. Tipton's services were solicited by Meridell after he was recommended by the Center's pediatrician. That Dr. Tipton may ultimately have been paid indirectly by funds made available from Illinois is insufficient to confer jurisdiction. *Chicago Silver Exchange v. United Refinery, Inc.,* 394 F.Supp. 1332 (N.D.Ill.1975).

■ Plaintiff, however, urges us to consider the fact that Dr. Tipton must have known or suspected that plaintiff was an Illinois resident when he obtained consent for the operation and suggests that it is therefore reasonable to view him as being able to anticipate being "haled" into court in Illinois.[2] The Court cannot agree. First, it is noted that Dr. Tipton obtained the consent to operate through Meridell and addressed his inquiries in this regard to "To Whom This May Concern." Second, even assuming Dr. Tipton was aware of plaintiff's residency, the Court cannot characterize either his conduct as a purposeful availment of the benefits and protections of Illinois law or the fact that plaintiff was an Illinois resident as anything but a mere fortuity. *World–Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 295, 100 S.Ct. at 566. Instead, in this Court's view, Dr. Tipton was merely fulfilling his professional

2. Plaintiff has also suggested that the Court should consider the fact that she is proceeding *in forma pauperis* herein in evaluating the personal jurisdiction issue. Plaintiff claims she cannot afford to prosecute her action in Texas and, thus, the Texas Physicians' dismissal on jurisdictional grounds is tantamount to a victory on the merits. Plaintiff's financial status is, however, irrelevant to whether defendants are constitutionally amenable to suit in Illinois. Further, plaintiff has not suggested why she cannot refile her action in Texas and proceed *in forma pauperis* in that jurisdiction.

responsibilities as a medical doctor to provide services to a patient in need of his skill. Jurisdiction cannot be asserted in this case, on this basis, without in effect subjecting all doctors to nationwide service of process should they be called upon to treat non–resident patients. *See also, Soares v. Roberts*, 417 F.Supp. 204 (D.R.I.1976); *Gelineau v. New York University Hospital*, 375 F.Supp. 661 (D.N.J.1974).

Illinois precedent supports the conclusions stated above. In *Muffo v. Forsyth*, 37 Ill. App.3d 6, 345 N.E.2d 149 (1976), the Illinois plaintiff sought medical treatment from a Missouri physician in Missouri. The defendant physician treated plaintiff over an extended period of time and even called a pharmacist in Illinois to prescribe the drug which had adverse effects on plaintiff and precipitated the lawsuit. In *Muffo*, however, these contacts, which are significantly more substantial than those of the instant case, were insufficient to sustain jurisdiction. The *Muffo* Court, affirming an order which dismissed the action, stated, "The unilateral action of the plaintiff in seeking and obtaining the service of the defendant cannot serve to satisfy the jurisdictional requirements." 37 Ill.App.3d at 9–10, 345 N.E.2d 149.

The holding in *Muffo* is applicable here. Defendant Tipton has no more availed himself of the benefits and protections of Illinois law than did the physician in *Muffo*. And since defendants Bailey and Pelphrey were merely retained by Dr. Tipton to assist him in surgery, they have even less contact with Illinois that Dr. Tipton. Accordingly, the Texas Physicians' motion to dismiss must be granted.

### PERSONAL JURISDICTION OVER THE MERIDELL DEFENDANTS

■ The motion of the Meridell Defendants raises an additional issue not previously discussed in connection with the filing of the Texas Physicians. Stated succinctly, the Meridell Defendants have argued that the Illinois long–arm statute cannot serve to obtain *in personam* jurisdiction over the Cruickshanks and Lippold, *as individuals*,

since all of their acts or omissions complained of by plaintiff were taken in their capacities as employees at the Meridell Achievement Center, Inc., a Texas corporation.

Although the issues are different with respect to these defendants, the same principles which governed the Texas Physicians' motion to dismiss are, of course, applicable to the concommitant filing of the Meridell Defendants. That is, the Court must evaluate the defendants' connection to the forum state, the forum's interest in the litigation and the plaintiff's stake in securing convenient and effective relief.

There is a substantial nexus between Illinois and both defendants Lippold and Gregor Cruickshank. Both individuals have substantially the same contacts with the forum. Each of the two travelled to Illinois to attend national child care conferences. On these occasions, they both might have met with IDCFS officials to discuss, generally, the status of various children placed at Meridell by the Department. In this regard, Gregor Cruickshank has stated that he also may have had telephone conversations with IDCFS workers in Illinois to arrange these meetings. In his deposition, Cruickshank also admits that on one occasion he visited Illinois to retrieve some runaway residents of Meridell.

Most significant to this analysis, however, are the contacts of the defendants with Illinois in connection with the child care contracts that were executed between IDCFS and Meridell. The General Care Agreement was signed and perhaps negotiated by Wayne Lippold. As indicated above, IDCFS placed many children at Meridell pursuant to this agreement, yielding the Center almost $800,000 per year in revenue. Both Cruickshank and Lippold traveled to Illinois, at least on an annual basis, to renegotiate the per–diem rate of payment specified in this instrument. Defendant Lippold also executed the individual care agreement pursuant to which plaintiff was admitted to Meridell.

Thus, although both defendants argue that the general care agreement and, in-

deed, their trips to Illinois have no connection to the current litigation, this Court cannot agree. First, the terms of the two contracts indicate that they were interrelated. The per–diem rate specified in Ms. Chancellor's individual care contract was determined by the applicable rate contained in the general contract. It certainly is not stretching the facts to conclude that, absent the arrangement between IDCFS and Meridell reflected in the more general instrument, Janice Chancellor would not have been placed in Meridell. Thus, defendants cannot deny their connection with plaintiff's cause of action by divorcing their activities in Illinois in conjunction with the general agreement from the individualized arrangements for plaintiff's admission to Meridell.

Not only are there substantial contacts between defendants and the forum state, but it also is apparent that the forum state has a strong interest in adjudicating this dispute. This stake extends beyond that of other cases in which the state's primary interest is in affording the protection of its courts to its own citizens. Rather, in the instant case plaintiff was a ward of the state and as such the state was entrusted with a fiduciary obligation to assure that she received adequate care and treatment. Accordingly, Illinois has a uniquely strong interest in determining that her rights in this regard are fairly and properly adjudicated. Moreover, Illinois' interest in the litigation is further heightened by the existence of the contract between the state agency and Meridell which lies beneath this lawsuit. The state is actively intertwined in plaintiff's claim.

Finally, the facts of the instant case suggest that plaintiff's interest in obtaining convenient and effective relief, *see, Kulko v. Superior Court, supra* at 436 U.S. 92, 98 S.Ct. at 1697, assumes unusually strong significance here. It cannot be said that plaintiff created the jurisdictional problem–*i. e.,* that the defendants reside and the claim arose in a jurisdiction far removed from her domicile. In contrast to the situation in *World–Wide Volkswagen,* in which plaintiffs voluntarily chose to drive through Oklahoma, plaintiff cannot be said to have in any way opted to go to Texas. She was placed there involuntarily by the IDCFS.

In short, plaintiff's presence in Texas where the operative facts occurred and the agents of the lawsuit may be found, is certainly more fortuitous than defendants' contrasting presence in Illinois from time to time. While this is not determinative here, it serves to caution the Court. Having been involuntarily dispatched to Texas once before, plaintiff is entitled to have this Court pause and seriously consider the fairness of remanding her to that forum once again.

After considering the factors outlined above, the Court is persuaded that Illinois' assertion of jurisdiction over defendants Gregor Cruickshank and Wayne Lippold does not violate due process. The Court is cognizant of the fact that both Cruickshank and Lippold acted within the forum state in their capacities as managing agents of the Meridell Center. The Court is also aware that its decision today flows against the weight of the precedent cited by the defendants which express the rule that jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation. *See e. g., Weller v. Cromwell Oil Co.,* 504 F.2d 927, 929 (6th Cir. 1974); *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902 (1st Cir. 1980); *Wilshire Oil Co. v. Riffe,* 409 F.2d 1277 (10th Cir. 1969); *Spelling–Goldberg Productions v. Bodek & Rhodes,* 452 F.Supp. 452 (E.D.Pa.1978); *Lehigh Valley Industries v. Birenbaum,* 389 F.Supp. 798 (S.D.N.Y.1975). At least in this case, however, a mechanical application this rule comports neither with traditional notions of fair play and substantial justice nor with the Court's responsibility to examine the jurisdictional question flexibly, on the basis of the facts of the particular case.

In declining to apply the above stated rule in this action, the Court notes first that the defendants have cited no controlling

precedent from this circuit.[3] In addition, many of the cases cited by defendants are distinguishable from the present factual context. For example, in *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974) the case principally relied on by defendants, plaintiff sued for breach of contract and violations of the antitrust laws against an out of state corporation and two of its non–resident officers. In contrast with the instant case, the *Weller* plaintiff never alleged that the individual defendants were ever within the state in connection with the subject matter of the litigation. Here it is undisputed that defendants Lippold and Cruickshank were present in Illinois on business clearly related to Ms. Chancellor's action. Moreover, in *Weller*, plaintiff merely relied on an inadequate affidavit to establish his jurisdictional facts. This affidavit did not even specifically allege that it was the individual defendants who made the allegedly false representations that gave rise to the lawsuit.

Other cases applying the rule are also factually distinguishable from this action. In *Idaho Potato Commission v. Washington Potato Commission*, 410 F.Supp. 171 (D.Ida. 1976) there again was no allegation that the individual defendants were ever within the desired forum state in conjunction with the subject matter of the lawsuit. In *Wilshire Oil Co. v. Riffe*, 409 F.2d 1277 (10th Cir. 1969), the Court in part relied on the fact that there was no nexus between the contacts of the individual defendants with the forum states and the litigation in dismissing a case for lack of *in personam* jurisdiction. *See also, Lehigh Valley Industries, Inc. v. Birenbaum*, 385 F.Supp. 798 (S.D.N.Y.1975), where the cause of action did not arise out

of the transaction of business within the forum. Still other cases have involved situations in which the individual defendant's corporate contacts have been so attenuated as to make an assertion of jurisdiction unreasonable.

In summary, many if not most of the decisions offered by defendants concerned situations in which the contacts between the individual defendants and the forum state were insufficient to confer jurisdiction *regardless* of whether the individuals acted in their corporate or personal capacities. They are thus ill–suited as guiding precedent. There are, however, some cases which from all appearances would be applicable here. For example, in *Path Instruments International Corp. v. Asahi Optical Co.*, 312 F.Supp. 805 (S.D.N.Y.1970), the Court noted that all of the individual defendants visited the state for business purposes connected with the subject matter of the litigation but declined to sustain jurisdiction because none of the defendants allegedly engaged in any conduct within the state for personal purposes rather than on behalf of their corporations. 312 F.Supp. at 810. To the same effect is dicta in *Quinn v. Bowmar Publishing Co., supra*, stating:

> The Court need not reach the question of whether Campbell's contacts with Maryland are sufficient in number under the statute, since Campbell was acting on corporate business during [his visits to the forum].

445 F.Supp. at 786, citing, *Wilshire Oil Co. v. Riffe*, 409 F.2d 1277 (10th Cir. 1969); and *Lehigh Valley Industries, Inc. v. Birenbaum*, 389 F.Supp. 798 (S.D.N.Y.), aff'd, 527 F.2d 87 (2d Cir. 1975).[4]

---

**3.** *Tommills Brokerage Co. v. Loeb, Rhodes & Co.*, 411 F.2d 764 (7th Cir. 1969), is the only case from the Seventh Circuit that defendants have brought to the Court's attention. It is wholly inapposite here. In *Tommills*, the district court found, and the court of appeals affirmed, that none of the defendants–corporate or individual–had sufficient contacts with Illinois so as to transact business within the state. The issue of personal jurisdiction over employees for acts on behalf of an employer was neither raised nor discussed.

**4.** The *Quinn* case is one of many which cite to *Wilshire Oil Co. v. Riffe*, 409 F.2d 1277 (10th Cir. 1969), for the proposition at issue here. After a review of the Tenth Circuit's opinion, the Court is not convinced that *Wilshire Oil* is as strong a precedent as one might be led to believe from the subsequent reliance on the case by other courts. Although *Wilshire Oil* cited other cases applying the rule, 409 F.2d at 1281, n.8., the court never actually decided the issue, but, rather, based its decision on other grounds. The court stated:

Assuming these cases are apposite, the Court declines to follow them. The analysis of the forum's interest in the dispute and the plaintiff's interest in obtaining convenient and effective relief strongly militate in favor of sustaining jurisdiction. Also, as outlined above, Messrs. Cruickshank and Lippold's contacts with Illinois are sufficiently extensive and amply related to plaintiff's cause of action so that if they were taken in their personal capacities there would be no question but that these individuals are amenable to suit in Illinois. For the reasons expressed below, if substantial justice and fundamental fairness is the standard, the Court cannot accept the conclusion that the mere fact that the defendants' actions were taken in their corporate rather than individual capacities must alter the result.

■ First, although foreseeability is not the only criteria for *in personam* jurisdiction, it is a significant factor. And in this regard, defendants' conduct and connections to Illinois were such that they could reasonably anticipate being haled into court in Illinois in this action. *World–Wide Volkswagen v. Woodson, supra* 444 U.S. at 297, 100 S.Ct. at 567. Second, defendants' trips to Illinois illustrate that forcing them to defend a suit in this forum would subject them to no greater inconvenience than those they experience in their professional careers. Moreover, defendants have, in a real sense, availed themselves of the benefits and protections of the laws of the forum state. It is sheer fiction to assume that Cruickshank and Lippold, as the managing agents of the Meridell Center, derived no benefit from their Illinois activities. The Center derives almost $800,000 in revenue from its contract with IDCFS. A portion of that revenue was compensation for the care provided to Ms. Chancellor. Viewed pragmatically, Cruickshank and Lippold at least owe a substantial portion of

their own salaries to the privilege of being able to conduct business in and with the state of Illinois. In addition, defendants have availed themselves of the benefits of the forum state in their efforts to acquire additional expertise in child care treatment by attending national conferences in this jurisdiction. It is this expertise which allows defendants the opportunity to treat Ms. Chancellor and children like her in return for payment from Illinois. In this added respect defendants have benefited from the protection of Illinois law.

In the context of this suit, a § 1983 action in which plaintiffs traditionally have looked to individual defendants for compensation, the Court concludes that fairness requires that the corporate shield not defeat plaintiff's attempt to assert jurisdiction over the Administrators of Meridell. This is not to suggest that the protections ordinarily afforded individuals by corporate constructs are wholly irrelevant to this case. Rather, the fact that the defendants acted on behalf of the Meridell Center in both Illinois and Texas may suggest that any ultimate liability due to plaintiff lies as much with the Center as with any individual defendant. The Court only suggests that the corporate shield cannot *a fortiori* defeat jurisdiction in the present context.

A mechanistic application of the rule defendants suggest would, moreover, lead to the anomoly of a corporation being amenable to the jurisdiction of a foreign forum solely due to the egregious conduct of an employee in that forum, while the perpetrator of the wrong is insulated from suit in that jurisdiction. The due process clause does not so require.

The situation with respect to the third Meridell Defendant, Patricia Cruickshank, is somewhat different. It is not alleged that Mrs. Cruickshank was ever within this jurisdiction. Moreover, all of her contacts with the forum were in connection with her

---

Furthermore, the signing of the bid form, and for that matter the attendance at the various maintenance lettings, were the acts of Homer Riffe as a corporate employee. As such they were not his personal acts *and seemingly* cannot constitute the transaction of business

by Homer Riffe as an individual.... *In any event*, it is clear that Wilshire has *failed to prove a sufficient nexus* between the submission of the bid and its claim against Homer Riffe.
409 F.2d at 1281 (emphasis added).

attempts to obtain adequate medical treatment for Ms. Chancellor and the consent required for her operation. Accordingly, the case for *in personam* jurisdiction over Mrs. Cruickshank is much like that regarding the Texas Physicians. The same considerations outlined above in that context are applicable here, *supra* at 1002. Accordingly, Mrs. Cruickshank's motion to dismiss is granted.

### VENUE UNDER 28 U.S.C. § 1391(b)

·The Meridell defendants have also questioned whether the proper venue of this action is the Northern District of Illinois.

■ Federal subject matter jurisdiction over this action is premised on the federal question, diversity and civil rights provisions of Title 28, 28 U.S.C. §§ 1331, 1332 & 1343. Since the current action is not solely based on diversity of citizenship, 28 U.S.C. § 1391(b) defines the appropriate venue.[5] *Lamont v. Haig*, 590 F.2d 1124 (D.C.Cir. 1978); *American Chemical Paint Co. v. Dow Chemical Co.*, 161 F.2d 956, 959 (6th Cir. 1947). This statute provides, in pertinent part:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

The District of Columbia Circuit recently has examined the relevant provisions of § 1391(b), as well as its legislative history, in some detail. That court concluded that the 1966 amendment to § 1391(b), which authorized suits in the district in which the claim arose, was designed to "facilitate the disposition of claims by providing, in appropriate cases, a more convenient forum to the litigants and witnesses involved." *Lamont v. Haig*, 590 F.2d 1124, 1133 (D.C.Cir. 1978), quoting, H.R.Rep.No. 1893, 89th Cong., 2d Sess. 2 (1966). According to the *Lamont* Court:

> Where "the claim arose" should ... be ascertained by advertence to events having operative significance in the case, and a common sense appraisal of the implications of those events for accessability to witnesses and records.

■ On the basis of the matters alleged, it is difficult to conclude that the proper venue of this lawsuit against Texas residents is Illinois rather than Texas. The operation, the allegedly deficient surgical and post--operative care and the alleged lack of disclosure to the plaintiff all occurred in Texas. Indeed, although plaintiff was a ward of Illinois, it appears that all events having "operative significance" in the case are centered in Texas. Venue, providing access to particular federal courts, is a Congressional determination which may not be and is not co–extensive within the reach of the due process clause. Congress has not provided access to this Court. Accordingly and alternatively, the venue objections are sustained.[6]

Finally, the Attorney General has moved, pursuant to Rule 25 of the Federal Rules of Civil Procedure, to suggest the death of Richard S. Laymon, former Guardianship Administrator of IDCFS. It is here noted that the death of Mr. Laymon is taken of record and as a result thereof, plaintiff's claims against this defendant are dismissed.

---

**5.** The fact that this is a § 1983 civil rights action is of no consequence here since there is no special venue provision for this type of lawsuit. *Jones v. Bales*, 58 F.R.D. 453 (N.D.Ga.) aff'd, 480 F.2d 805 (5th Cir. 1972); *Jiminez v. Pierce*, 315 F.Supp. 365 (S.D.N.Y.1970).

**6.** Accordingly, the Court is prepared to entertain a motion to transfer the cause to Texas pursuant to 28 U.S.C. 1406, or, at plaintiff's option, she may elect to proceed in the state courts of Illinois, given the disposition, of the jurisdictional defenses herein.