Thomas T. WILLIAMS and Kempy
Mitchell, Plaintiffs,

v.

Victor GARCIA, et al., Defendants.

Civ. No. 83–0623.

United States District Court,
E.D. Michigan, S.D.

Aug. 24, 1983.

Kenneth W. Morrison, Detroit, Mich., and
Robert A. Peurach, Bloomfield Hills, Mich.,
for plaintiffs.

Thomas D. Beeby, Detroit, Mich., for
Sheriff Santos and Webb Co.

Anthony C. McGettrick, Asst. City Atty.,
Laredo, Tex., and James C. Zeman, Detroit,
Mich., for Garcia, Tatangelo, Police Dept. &
City of Laredo.

## MEMORANDUM OPINION

RALPH M. FREEMAN, Senior District
Judge.

The complaint filed in this case contains
two counts. Jurisdiction is based on 42
U.S.C. §§ 1981, 1983, 1985(3), 1986, and the
First, Fourth, Fifth, Sixth, Eighth, and
Fourteenth Amendments. Plaintiffs' claim
is based on the imprisonment of plaintiffs
in Laredo, Texas by the City of Laredo
Police Department. Plaintiffs' first count
asserts that defendants, acting separately
and in concert, deprived them of a battery
of constitutionally protected rights. (Plain-
tiffs' Complaint ¶ 21). The second count
asserts that the same defendants are liable
for the same conduct on a variety of tort

theories under Texas law. In lieu of answering the complaint, defendants Mario Santos, Jr., Webb County, Texas, Victor Garcia, Aldo Tatangelo, City of Laredo, Texas, and the Laredo Police Department have moved to dismiss the complaint pursuant to F.R.Civ.P. 12(b)(2) and (3) or, in the alternative, for change of venue to the Western District of Texas pursuant to either 28 U.S.C. § 1404(a) or 1406(a). There are four unnamed Texas defendants, Laredo Police Officers A and B, Laredo Police Detective John Doe, and Laredo Warrant Officer Richard Roe. The only other defendant is Joseph Moses, who is alleged to be a resident of Michigan. Based on the record in this case, Moses has not been served with the complaint. Argument was heard on August 3, 1983 at which time this matter was taken under advisement.

*12(b)(2) Motion to Dismiss*

The Court will first review the Texas defendants'[1] motion to dismiss for lack of personal jurisdiction under F.R.Civ.P. 12(b)(2). *Leroy v. Great W. United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 2714–15, 61 L.Ed.2d 464 (1979). Each party agrees that valid service depends upon the reach of Michigan's long-arm statute under F.R. Civ.P. 4(e). This Court must first determine whether the state statute authorizes jurisdiction over these defendants and, second, whether the jurisdictional reach of the statute is within the constitutional due process limits of the Fourteenth Amendment. When the state has permitted its courts to reach the constitutional limit, the two questions merge into one. *See World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *National Can Corp. v. K Beverage Co.,* 674 F.2d 1134 (6th Cir.1982); *Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374 (6th Cir.1968).

In the case at hand, plaintiffs contend that the Court has limited personal jurisdiction over the Texas defendants under M.C. L.A. § 600.705(2) and § 600.715(2). The relevant language of these sections, which apply to individuals and corporations, respectively, and which is identical, requires "[t]he doing or causing of any act to be done, or consequences to occur, in the state resulting in an action for tort." Plaintiffs all but acknowledge that all conduct which they allege violated their constitutional rights and all conduct which they allege was tortious occurred in Texas. The only nexus to Michigan is defendant Moses, who plaintiffs allege conspired with the Texas defendants resulting in the alleged injuries to plaintiffs.

Plaintiffs allege the following facts in their complaint, which give rise to their cause of action. Defendant Garcia is the Chief of Police for the City of Laredo. Defendant Tatangelo is the Mayor of the City of Laredo. Defendant Mario Santos, Jr., is the Sheriff of Webb County. Plaintiffs' employer, Stephen Talley, entered into a lease agreement with defendant Moses for use of a tractor to haul freight. Moses supplied the tractor to Talley who then engaged plaintiffs to haul freight to Missouri. While in Missouri, plaintiffs obtained a one-way haul from Lebo, Kansas to Laredo, Texas. Subsequent to plaintiffs' departure from Detroit, a dispute arose between Moses and Talley with respect to the terms of the lease. At this point, Moses demanded payment or return of his tractor. When Talley refused both demands, plaintiffs allege that Moses set in motion the events which led to their arrest and incarceration in Laredo, Texas for unauthorized use of a motor vehicle under the Texas Penal Code. The alleged injurious conduct of the defendants is asserted to have begun with the arrest and continued throughout their incarceration. The plaintiffs have presented two theories on just how the Laredo Police Department was brought into this matter. In the complaint, at ¶ 5, plaintiffs allege that defendant Moses directly contacted the Laredo Police Department. In plaintiffs' response to the motions now before the Court, they allege that Moses

---

1. The phrase "Texas defendants" will be used as a shorthand expression to refer to the six Texas defendants who have filed the motions now before the Court.

first contacted the Detroit Police Department about the missing tractor and that it was the Detroit Police Department who then contacted the Laredo Police Department. When questioned about the discrepancy at the hearing, plaintiffs asserted that their investigation has led them to believe that Moses initially contacted the Detroit Police Department. Plaintiffs noted, however, that they need further time to discover the nature of Moses' contacts with both the Detroit Police Department and the Laredo Police Department. Plaintiffs allege that the Laredo Police Department obtained a warrant for their arrest based on the information transmitted by the Detroit Police Department. The plaintiffs were then arrested pursuant to the warrant. Plaintiffs describe the subsequent events as follows:

After apprehending the plaintiffs, the Laredo Police Department contacted the Detroit Police Department, by telecommunication, to determine whether to extradite the plaintiffs for prosecution in the State of Michigan. The Detroit Police, pursuant thereto, contacted Moses for verification of the plaintiffs' identities and for a formal, sworn complaint. Moses, however, refused to swear to the formal complaint because his charges were unfounded.

Faced with an inadequate record the Detroit Police Department sent another message to the Laredo Police Department directing that the plaintiffs be immediately released. However, in spite of that direction, and without charging plaintiffs with any violation of Texas law, the Laredo Police Department retained plaintiffs in jail for thirty-eight (38) more days. Plaintiffs understand that the Laredo Police Department did not release them because of further directions directly from Moses. It was during that false imprisonment period that plaintiffs were subjected to the repeated psychological and physical abuse alleged in the complaint which included, but was not limited to, racial slurring, inadequate physical protection, grossly substandard meals and general ill treatment, which resulted in the anxiety, humiliation and general suffering for which plaintiffs are suing herein.

For purposes of the instant motion, therefore, the connection between the tortious course of conduct that began with Moses' fraudulent complaint filed in Detroit, and continued with the other malicious acts in Texas, turns upon the conspiracy between the Texas defendants and Moses to subject the plaintiffs to retributional abuse without regard to constitutional rights. (Plaintiffs' brief in response to Motion to Dismiss). Plaintiffs contend that, because very little discovery has been completed, they are not able to set forth the nature of defendant Moses' contacts with the Texas defendants. This is compounded by their inability to serve Moses with the complaint in this action.

■ In *Hadad v. Lewis*, 382 F.Supp. 1365 (E.D.Mich.1974), M.C.L.A. § 600.705(2) was construed as bestowing upon Michigan courts the broadest grant of jurisdiction that would be consistent with due process, citing *Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623 (1971). Section 600.715 has been construed as granting equally extensive jurisdiction. *Microelectronic Sys. Corp. v. Bamberger's*, 434 F.Supp. 168 (E.D.Mich. 1977). Thus, the sole inquiry for this Court is whether there are minimum contacts between the defendants and Michigan, keeping in mind that "limited jurisdiction ... exposes a nonresident to suit in Michigan only for a cause which arose out of the relationship serving as a basis for such jurisdiction." *Sifers v. Horen*, 385 Mich. at 199, 188 N.W.2d 623. It is clear that even a single act may provide the basis for long-arm jurisdiction under the statute. *Khalaf v. Bankers & Shippers Ins. Co.*, 404 Mich. 134, 273 N.W.2d 811 (1978); *Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623 (1971). Considering the due process limitations on the exercise of jurisdiction based on a single act, the Sixth Circuit has developed three criteria for determining the outer limits of such jurisdiction:

First, the defendant must purposely avail himself of the privilege of acting in the forum state. Second, the cause of action must arise from defendant's activities there. Finally, the acts of the defendant

or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968). Michigan also requires a plaintiff to demonstrate that a non-resident defendant has purposefully availed himself of the privilege of conducting activities in Michigan before he can be subject to the jurisdiction of Michigan courts. *Khalaf v. Bankers & Shippers Ins. Co., supra.*

Since there is no statutory procedure for resolving the issue of jurisdiction, the mode of its determination is left to the discretion of the trial court. *Gibbs v. Buck,* 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939). Although the burden of establishing jurisdiction is on the plaintiff, the burden is ordinarily met by a prima facie showing that jurisdiction is confined by the state long-arm statute. *See Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir.1974); *United States v. Montreal Trust Co.,* 358 F.2d 239 (2d Cir.), *cert denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). The burden is relatively slight and the Court must consider the pleadings and affidavits in the light most favorable to plaintiff to determine whether plaintiff has demonstrated facts which would support a finding of jurisdiction. *Welsh v. Gibbs,* 631 F.2d 436 (6th Cir.1980), *cert denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981). However, plaintiffs may not rest on their complaint but must come forward with evidence, by affidavits or otherwise, to support jurisdiction. *Amba Mktg. Sys. v. Jobar Int'l., Inc.,* 551 F.2d 784 (9th Cir.1977).

Plaintiffs contend that the Texas defendants caused an act to be done or consequences to occur in Michigan resulting in an action for tort. M.C.L.A. §§ 660.705(2), 715(2). Plaintiffs rely on their theory of a conspiracy to demonstrate that the defendants caused an act to be done in Michigan. The theory advanced, while not clearly articulated, rests on the legal premise that the acts of a conspirator are imputed to all other co-conspirators. Thus, in the case at hand, plaintiffs contend that the acts of defendant Moses in Michigan should be imputed to the Texas defendants. Under this theory, according to plaintiffs, the Texas defendants are subject to the jurisdiction of this Court for having caused an act in Michigan. Plaintiffs have cited and relied on two cases that have adopted and applied such a theory. *Dixon v. Mack,* 507 F.Supp. 345 (S.D.N.Y.1980); *Istituto Bancario Italiano v. Hunter Eng'g Co.,* 449 A.2d 210 (Del.1982). The Sixth Circuit has neither adopted nor rejected the conspiracy theory of *in personam* jurisdiction. *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229 (6th Cir.), *cert denied,* 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981). In *Chrysler,* the court held that Chrysler's allegations of a conspiracy among the defendants were unsupported by any factual assertions. Therefore, the Court did not have to address the viability of the conspiracy theory in this Circuit. In the case at hand, plaintiffs' allegations are not supported by any affidavits; plaintiffs themselves have failed to file any affidavits.

This case was filed February 22, 1983. Because the Texas defendants opted to file the motions now before the Court prior to filing an answer to the complaint, little or no discovery has taken place. Thus, the Court finds that it would be premature to dismiss the complaint against the Texas defendants due to plaintiffs' failure to factually support their assertions.

The Court will, however, review the allegations under the analyses proposed in *Dixon, supra,* and *Hunter, supra,* to determine if there are minimum contacts, accepting the allegations of plaintiffs as established *and* accepting the viability of the conspiracy theory in this Circuit. In *Dixon v. Mack, supra,* plaintiff was abducted in New York City where he was a member of the Unification Church. The abduction was part of an effort to deprogram him. Plaintiff was eventually taken to Pennsylvania where he was treated by a psychiatrist. Plaintiff brought suit in New York against several individuals involved in the effort to deprogram him, including the Pennsylvania psychiatrist. The psychiatrist moved to quash service. Plaintiff asserted that the psychiatrist was amenable to service in New York

as a member of the conspiracy to deprogram him. As such, under the conspiracy theory, the psychiatrist was liable for the conduct of the actors who committed the tortious act of allegedly abducting plaintiff in New York City. The court noted:

 It has been recognized that "under certain circumstances a person may be subjected to jurisdiction under CPLR § 302(a)(2) on the theory that his co-conspirator is carrying out activities in New York pursuant to the conspiracy." *Socialist Workers Party v. Attorney General of the United States*, 375 F.Supp. 318, 321 (S.D.N.Y.1974). To establish jurisdiction on this basis, plaintiff must make a prima facie factual showing of conspiracy. *Merkel Associates, Inc. v. Bellofram Corp.*, 437 F.Supp. 612, 617 (W.D.N.Y. 1977). *See also United States v. Montreal Trust Co.*, 358 F.2d 239, 242 & n. 4 (2d Cir.1966), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). He must also allege specific facts warranting the inference that the defendant was a member of the conspiracy. *Louis Marx & Co. v. Fuji Seiko Co.*, 453 F.Supp. 385, 391–92 (S.D.N.Y.1978). *"The plaintiff must come forward with some definite evidentiary facts to connect the defendant with transactions occurring in New York."* *Socialist Workers Party*, 375 F.Supp. at 322.

507 F.Supp. at 348 (emphasis added). The New York court found that the act of allegedly abducting plaintiff in New York City could be imputed to the Pennsylvania psychiatrist. The alleged abduction was a substantial act in New York sufficient to satisfy the due process requirements of minimum contacts and therefore assert jurisdiction over the non-resident psychiatrist. Both the injury and the alleged tortious act occurred in New York.

In *Istituto Bancario Italiano v. Hunter Eng'g Co., supra,* upon which plaintiff relies, the Delaware Supreme Court reviewed the pronouncements of various courts on the "conspiracy theory" of *in personam* jurisdiction. The court then developed a five prong test:

We therefore hold that a conspirator who is absent from the forum state is subject to the jurisdiction of the court, assuming he is properly served under state law, if the plaintiff can make a factual showing that: (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) *a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state;* (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

449 A.2d at 225 (emphasis added). The significance of the third element cannot be understated. The element is firmly rooted in the minimum contacts requirement set forth by the Supreme Court in *International Shoe.* The Sixth Circuit has also stressed the significance of conduct within the forum state: "[T]he cause of action must arise from defendant's activities" in the forum state.

 The question before this Court is whether the alleged acts of defendant Moses in Michigan, when attributed to his alleged Texas co-conspirators, satisfy the due process requirement of minimum contacts with respect to the Texas defendants. The only acts alleged to have been committed by Moses in Michigan are his phone calls to the Detroit Police Department and/or the Laredo Police Department. All conduct which allegedly deprived plaintiffs of certain of their constitutional rights and which was allegedly tortious occurred in Texas. Plaintiffs would have this Court find that these phone calls initiated by Moses in Michigan are substantial acts in Michigan sufficient to assert jurisdiction over the Texas defendants when imputed to them pursuant to the conspiracy theory. The Court cannot agree with such a conclusion. The acts of defendant Moses are *not* sufficient enough for this Court to conclude that it would be reasonable to assert jurisdiction over the Texas defendants under the conspiracy theory. In *Dixon,* the tortious act and injury occurred in New York. Thus, once the New York

court found that plaintiffs had established a prima facie case of a conspiracy which included the Pennsylvania psychiatrist, the court could conclude that there were sufficient contacts with New York to assert *in personam* jurisdiction over the psychiatrist. Indeed, the conduct occurring in New York was significant. In *Hunter,* the Delaware Supreme Court held that before a conspirator absent from Delaware can be called to answer in Delaware, the plaintiff must make a showing that a substantial act or effect in furtherance of the conspiracy occurred in Delaware.

In the case at hand, the only acts taking place in Michigan that plaintiffs can hope to establish are phone conversations between the defendant Moses and the Laredo Police Department. The facts of this case, viewed by the Court as if established, simply do not measure up to the facts in *Dixon* or the test proposed in *Hunter.*

Further, the actions of defendant Moses, if imputed to the Texas defendants, do not satisfy the Sixth Circuit's three prong test in *Southern Machine, supra.* Concededly, the first prong is inapplicable to the conspiracy theory of *in personam* jurisdiction.[2] But with respect to the second prong, the plaintiffs could not establish that the cause of action arises from the Texas defendants' activities in Michigan. The cause of action is based solely on the actions of the Texas defendants in Texas. The injuries complained of, the effects of those actions, were sustained solely in Texas. Finally, this Court cannot conclude that plaintiffs have satisfied the third prong of the test. The acts of defendant Moses, if imputed to the Texas defendants, are not a substantial enough connection with Michigan to make the exercise of jurisdiction reasonable. Therefore, the Court concludes that the Texas defendants lack the requisite minimum contacts with Michigan necessary for this Court to assert *in personam* jurisdiction over them.

Thus, the Court need not pass on the viability of the conspiracy theory of *in per-*

*sonam* jurisdiction, having found that plaintiffs could not satisfy the requisite elements of the theory if all their factual allegations were accepted as having been established.

The only other possible nexus of the Texas defendants with Michigan is the second half of M.C.L.A. §§ 600.705(2), .715(2), tortious conduct causing consequences to occur in Michigan. In *Storie v. Beech Aircraft Corp.,* 417 F.Supp. 141 (E.D.Mich.1976), Judge Kennedy was called on to review the nature of conduct causing consequences to occur in Michigan.

> The Court concludes that when the Michigan statute speaks of causing consequences to occur within the state, it applies to situations in which an act or conduct of the defendant outside of Michigan leads to an event in Michigan which gives rise to a tort claim. In the context of personal injury cases, that event occurs when the injury results, and in this case that consequence occurred in Ohio at the time of the airplane crash.

*Id.* at 145. In the case at hand the injuries were sustained at the time of the arrest and throughout incarceration. As such, the consequences did *not* occur in Michigan. Further, plaintiffs cannot bootstrap jurisdiction under this theory to their conspiracy theory. The injuries were simply not suffered in Michigan.

Thus, plaintiffs have failed to establish the relationship necessary under MCLA §§ 600.705(2), .715(2) for this Court to require the named Texas defendants to defend themselves in Michigan. This is also true of the four unnamed individuals who are members of the Laredo Police Department. While their identities are not yet known to the plaintiffs, their actions, and the consequences of those actions, occurred in Laredo, Texas. The only defendant possibly subject to the jurisdiction of this Court is Joseph Moses. Therefore, the 12(b)(2) motion to dismiss of the six named Texas defendants will be granted.

---

**2.** Proof of the absent defendant's membership in the conspiracy could be substituted for the first prong.

**1458**

*12(b)(3) Motion to Dismiss*

Alternatively, the Texas defendants have moved for dismissal pursuant to F.R.Civ.P. 12(b)(3), improper venue. Under 28 U.S.C. § 1391(b), "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law." Jurisdiction in this case is founded on 28 U.S.C. § 1331, federal question jurisdiction. Therefore, venue is proper only where all defendants reside or where the claim arose. Plaintiffs concede, and it is beyond question, that there is no district wherein all defendants reside. Thus, this action can proceed only in the district where the claim arose.

In *Lamont v. Haig,* 590 F.2d 1124 (D.C. Cir.1978), the court reviewed the legislative history surrounding section 1391(b).

The legislative history of Section 1391(b), by its very generality, is helpful in the resolution of the problem. The portion of Section 1391(b) extending venue to a district "in which the claim arose" was added by amendment in 1966, and the resulting "enlargement of venue" was intended merely to "facilitate the disposition of ... claims by providing, in appropriate cases, a more convenient forum to the litigants and the witnesses involved." The legislative concern was pragmatic: Since the place where the claim arose is the situs of events important to the case, Congress undertook "to facilitate the administration of justice" by permitting suit in a district where the litigation might more handily progress.

This practical orientation of Section 1391(b), then, counsels against adherence to mechanical standards in its application. Rather, where "the claim arose" should in our view be ascertained by advertence to events having operative significance in the case, and a commonsense appraisal of the implications of those events for accessibility to witnesses and records.

*Id.* at 1133–34 (footnotes omitted). Earlier in the opinion, the court noted that "resort to familiar common law tort theories might furnish a reasonable ground for selection of a particular district in uncomplicated tort or contract actions." *Id.* at 1133.

Plaintiffs cited *Maney v. Ratcliff,* 399 F.Supp. 760 (E.D.Wis.1975) in their brief in opposition to the Texas defendants' 12(b)(3) motion to dismiss. This Court finds the *Maney* court's analysis quite appropriate. Unfortunately for the plaintiffs, the analysis requires dismissal.

Section 1983 actions which contain allegations of constitutional deprivations caused by unlawful arrests and seizures are analogous to tort actions for false arrest and imprisonment. See, *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Since § 1983 should be read against a background of tort law liability, *Pierson v. Ray,* 386 U.S. 547, 556–557, 87 S.Ct. 1213 [1218–1219], 18 L.Ed.2d 288 (1967); *Monroe v. Pape,* supra, 365 U.S. at 167, 81 S.Ct. 473 [at 484] law governing where tort law claims arise is highly relevant for determining where claims under § 1983 should be ruled to have arisen. The traditional rule is that the claim or cause of action arises where the injury occurs, since until there is an injury an essential element of the cause of action is missing. See, *Miller v. Cousins Properties, Inc.,* 378 F.Supp. 711 (D.Vt. 1974); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 291 F.Supp. 252, 260 (E.D.Pa.1968); *Rosen v. Savant Instruments, Inc.,* 264 F.Supp. 232 (E.D.N.Y.1967).

*Id.* at 766–67.

The cause of action in the instant case sounds principally in false arrest and imprisonment. Each of the other claims arises incidentally as a result of the arrest and confinement of the plaintiffs in Laredo, Texas. Under the *Maney* analysis, the injuries suffered by plaintiffs were sustained solely in Texas. Therefore, the cause of action arose in the Southern District of Texas, which encompasses the City of Laredo.

■ This finding is not altered under the analysis proposed in *Lamont.* The "events having operative significance in the case" occurred in the City of Laredo. The alleged

acts of defendant Moses in Michigan, viewed as if established, simply do not represent a substantial portion of the acts giving rise to the plaintiffs' cause of action. Thus, the cause of action arose in the Southern District of Texas and, accordingly, venue is proper in that district. Conversely, venue in the Eastern District of Michigan is improper.

*Summary*

For the reasons stated above, this action will be dismissed with respect to the six named Texas defendants. The Court finds that it lacks *in personam* jurisdiction over the Texas defendants and thus dismissal is required under F.R.Civ.P. 12(b)(2). Alternatively, venue in the Eastern District of Michigan is not authorized under 28 U.S.C. § 1391(b) and thus dismissal under Rule 12(b)(3) is also required. In light of the Court's disposition of the motions to dismiss, it is not necessary to address the Texas defendants' motion to transfer venue to the Southern District of Texas. An appropriate order shall be submitted.