Mark COOK, Plaintiff,

v.

Richard HOLZBERGER,
et al., Defendants.

No. C–1–90–273.

United States District Court,
S.D. Ohio, W.D.

Jan. 9, 1992.

348

Craig David Hedric, Holcomb & Connelly, Hamilton, Ohio, for plaintiff.

Geoffrey Paul Walker, Bieser, Greer & Landis, Dayton, Ohio, Victoria Ann Daiker, Asst. Pros. Atty., Butler County, Hamilton, Ohio, Wilson G. Weisenfelder, Jr., Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, for defendants.

## ORDER DISMISSING CLAIMS AGAINST THOMAS McKINDLES AND THE ROSCOMMON COUNTY SHERIFF'S DEPARTMENT AND DENYING MOTION FOR SANCTIONS

SPIEGEL, District Judge.

This matter is before this Court for consideration of defendant Thomas McKindles' response to request for default and motion to dismiss and for sanctions (doc. 25). The Court will construe this motion as a motion to vacate the default judgment entered against Mr. McKindles on September 12, 1991. The plaintiff opposes this motion (doc. 26), and has filed a supplemental brief in opposition to the motion (doc. 33). Defendant McKindles replied (doc. 30). For the reasons set forth below, the default judgment entered against Sheriff McKindles (doc. 23) must be vacated, and the claims against him dismissed. The motion for sanctions is denied.

## BACKGROUND

On April 8, 1988, the plaintiff in this action, Mark Cook, was arrested at his home in Houghton Lake, Roscommon County, Michigan. The Roscommon County Sheriff's Department and/or the Michigan State Police Department arrested Mr.

Cook pursuant to an arrest warrant issued by the Butler County Sheriff's Department, Butler County, Ohio. The Michigan authorities received the warrant through the National Crime Information Center ("NCIC") computer network.

Upon his arrest, Mr. Cook immediately and repeatedly informed the officers that they had arrested the wrong Mark Cook. The Mark Cook for whom the warrant was issued is 6'3" tall, has brown hair, blue eyes and has no tatoos. The Mark Cook who was actually arrested, and who is now the plaintiff in this action, is 5'10" tall, has blond hair, blue eyes and a tatoo on his right arm. Mr. Cook was held in the Roscommon County Jail for eleven days and then extradited to Butler County, Ohio where he was again imprisoned until he posted bond. The charges against the plaintiff were ultimately dismissed on June 1, 1989.

The plaintiff initiated this action on April 6, 1990. Mr. Cook states a claim for a violation of his federal civil rights pursuant to 42 U.S.C. § 1983 as well as state law claims for false arrest and malicious prosecution. He named Thomas McKindles, Roscommon County Sheriff, as a defendant in his original complaint.

Sean Fitzgerald, a law clerk acting on behalf of counsel for Sheriff McKindles, contacted Theresa Tarchinski, co-counsel for the plaintiff, and informed her that Sheriff McKindles was not the Roscommon County Sheriff at the time Mr. Cook was arrested. Tarchinski Affidavit attached to doc. 26. Ms. Tarchinski responded by letter dated September 25, 1991, that she and Mr. Shimko (counsel for the plaintiff) considered Sheriff McKindles to be the proper defendant. Ex. H to doc. 26. On August 7, 1991, the plaintiff filed an amended complaint pursuant to an order of this Court unrelated to this issue. In the amended complaint, the plaintiff inadvertently omitted the name Thomas McKindles, leaving only the words "ROSCOMMON COUNTY SHERIFF" as a named defendant. Doc. 19. Sheriff McKindles claims that the omission of his name from the amended complaint acted as a voluntary dismissal of

all claims against him, and therefore he did not file an answer to the complaint. On September 12, 1991, the clerk of courts, at the request of counsel for the plaintiff, entered a default judgment against Sheriff McKindles. Doc. 23.

Sheriff McKindles now moves this Court to vacate the entry of default judgment against him, dismiss him from this action, and impose Rule 11 sanctions against counsel for the plaintiff. In support of his motion, Sheriff McKindles claims: (1) that the entry of default was improper because Sheriff McKindles was not named in the amended complaint; (2) that this Court lacks personal jurisdiction over Thomas McKindles; (3) that Sheriff McKindles was never properly served; and (4) because counsel for the plaintiff failed to make reasonable efforts to ascertain the name of the Roscommon County Sheriff at the time of Mr. Cook's arrest, and failed to withdraw the complaint against Sheriff McKindles when he was informed that Sheriff McKindles was not the sheriff at that time, Rule 11 sanctions should be imposed against plaintiff's counsel. The plaintiff, however, contends: (1) that the inadvertent omission of Sheriff McKindles's name does not act as a voluntary dismissal; (2) that this Court has personal jurisdiction over Sheriff McKindles; (3) that service was proper; and (4) that Rule 11 sanctions are inappropriate. Because we conclude that this Court lacks personal jurisdiction over Sheriff McKindles, the entry of default judgment must be vacated and the complaint against Sheriff McKindles must be dismissed.

■ In a personal-capacity action, the plaintiff attempts to impose personal liability for actions a specific person has taken. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In contrast, an official-capacity action is an action against the entity of which the official is an agent. *Id.* at 165–66, 105 S.Ct. at 3104–05. An official-capacity action is not a suit against the official personally, and no personal liability may be imposed. *Id.*

■ In the case at bar, Mr. Cook admits that his action against Sheriff McKindles is solely an official-capacity action. *See* doc. 33. The claims against Sheriff McKindles are actually claims against the Roscommon County Sheriff's Department rather than against Sheriff McKindles personally. Therefore, whether or not Sheriff McKindles was the sheriff at the time of Mr. Cook's arrest is irrelevant.

The issue here, then, is whether this Court has personal jurisdiction over Sheriff McKindles on behalf of the Roscommon County Sheriff's Department. We conclude that we do not.

■ The burden of establishing that personal jurisdiction exists rests with the plaintiff. *See, e.g., American Greetings Corp. v. Cohn*, 839 F.2d 1164 (6th Cir. 1988). There are two types of personal jurisdiction—"general" jurisdiction and "specific" jurisdiction. *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A court has general jurisdiction where "a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third National Bank v. Wedge Group Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990). A court has specific jurisdiction over a defendant in "a suit arising out of or related to the defendant's contacts with the forum." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984)).

The legislature in Ohio has enacted a long-arm statute providing for specific jurisdiction in certain circumstances. *See* Ohio Rev.Code § 2307.382. This statute provides in part as follows:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

\* \* \* \* \* \*

(4) Causing tortious injury in this state by an act or omission outside this state if

he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

Ohio Rev.Code § 2307.382(A)(4) (Page 1989 Supp.).

The Ohio long-arm statute "has been construed to extend to the outer limits of due process, and thus an Ohio personal jurisdiction analysis becomes an examination of constitutional limitations." *R.L. Lipton Distributing Co. v. Dribeck Importers, Inc.*, 811 F.2d 967, 969 (6th Cir.1987). In *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir.1968), the Sixth Circuit set forth a three-part test for determining specific personal jurisdiction consistent with due process:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 381 (footnote omitted).

The first criterion, the "purposeful availment" requirement, "ensures that the defendant will not be haled into a jurisdiction as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Third National Bank v. Wedge Group Inc.*, 882 F.2d 1087, 1090 (6th Cir.1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990) (citations omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). At least two courts have considered whether accessing the National Crime Information Center ("NCIC") computer system is sufficient to constitute "purposeful availment."

In *Maney v. Ratcliff*, 399 F.Supp. 760 (E.D.Wis.1975), Ronald Lee Maney was stopped for a routine traffic violation in Wisconsin. Upon checking the NCIC computer, the officers discovered that Mr. Maney was listed as a "fugitive from justice" in Louisiana. Mr. Maney declined to waive extradition, and his attorney contacted the Louisiana authorities requesting that they immediately forward appropriate extradition papers. When the extradition papers had still not arrived four weeks later, the Wisconsin prosecutor released Mr. Maney and declined prosecution.

Approximately four months later, Mr. Maney was again arrested by police in Wisconsin because of a defective automobile registration. The NCIC computer still listed Mr. Maney as a "fugitive from justice" in Louisiana. When Mr. Maney's attorney contacted Louisiana police, he was ultimately informed that the Louisiana police did not have enough evidence to extradite Mr. Maney at the time of his earlier arrest, but that they had since discovered additional evidence and now desired to extradite Mr. Maney. The matter was then brought before the County Court of Milwaukee County, Wisconsin. The Court adjourned the matter for thirty days to await the necessary information and extradition papers from Louisiana. Thirty days later Louisiana authorities still had not forwarded any of the necessary materials, and the case against Mr. Maney was again dropped.

Two months later, on December 31, 1974, Mr. Maney was again arrested, this time by police in New York. His name was checked on the NCIC computer at the port of entry and showed that he was still a "fugitive from justice" in Louisiana. Because Mr. Maney had no money to post bond, and because he feared losing his job, Mr. Maney sought a temporary restraining order from the United States District Court for the Eastern District of Wisconsin. *Id.* at 764–65.

The defendants, the chief of police of Baton Rouge, Louisiana, a police officer, the district attorney for East Baton Rouge Parish and an assistant district attorney, filed a motion to dismiss for lack of personal jurisdiction. *Id.* at 764. The court concluded that the defendants had purposely availed themselves of the privileges and

benefits of Wisconsin law. The defendants in that action solicited Mr. Maney's arrest in Wisconsin by means of the NCIC entry, contacted the Wisconsin police officers via telephone and telegraph, and represented to the district attorney's office in Wisconsin on two separate occasions that extradition was desired and appropriate papers would be forwarded. Because of these contacts with officers in Wisconsin, the Court concluded that personal jurisdiction in Wisconsin was proper. *Id.* at 768–69.

In *McLeod v. Harmon*, 149 Ill.App.3d 378, 102 Ill.Dec. 831, 500 N.E.2d 724 (1986), a sheriff's deputy from Illinois brought an action against an Oklahoma prison warden, an Oklahoma prison, the Oklahoma Department of Corrections and the State of Oklahoma claiming negligence in the control and supervision of two Oklahoma inmates who escaped and assaulted Deputy McLeod. The defendants moved to dismiss the action for lack of personal jurisdiction. Deputy McLeod contended that the Oklahoma defendants had purposefully availed themselves of the privileges and benefits of Illinois law by enacting the Uniform Extradition Act and utilizing the NCIC system. *Id.* at 380, 102 Ill.Dec. at 832, 500 N.E.2d at 725. The Court granted the defendants' motion, stating, "We find it an untenable conclusion that the Oklahoma legislature's action of adopting the Uniform Extradition Act or the use of the NCIC system could be construed as acts by which Oklahoma purposefully availed itself of the privileges and benefits of Illinois law." *Id.* 102 Ill. Dec. at 833, 500 N.E.2d at 726.

■ In the case at bar, the defendant had fewer contacts with the forum state than the defendants in *Maney*, but more substantial contact than the defendants in *McLeod*. In this case, the Roscommon Sheriff's Department did not solicit Mr. Cook's arrest by entering his name into the computer. It merely checked the computer, and arrested Mr. Cook upon finding the entry. Unlike the defendants in *Maney*, the Roscommon County Sheriff's Department arrested Mr. Cook only once, and did not have an on-going relationship with the forum state. On the other hand, once Mr.

Cook was arrested, the Roscommon County Sheriff's Department communicated with the Butler County officials regarding Mr. Cook's extradition. We must conclude, however, that exercising personal jurisdiction under these circumstances is neither appropriate nor advisable.

■ The Federal Bureau of Investigation established the NCIC computer system to enable law enforcement officers in other jurisdictions to apprehend fleeing suspects. This system provides a vital service. Liberal use of the NCIC system to apprehend suspects and bring them to justice before additional crimes are committed must be encouraged. In addition, simply accessing the information available through the NCIC system is insufficient to constitute "purposeful availment." Moreover, to conclude otherwise would subject law enforcement officers to personal jurisdiction in every state.

### CONCLUSION

For the reasons set forth above, this Court lacks personal jurisdiction over Sheriff McKindles and the Roscommon County Sheriff's Department. Accordingly, Mr. McKindles' motion to vacate the default judgment and dismiss the claims against him (doc. 25) is hereby granted. Mr. McKindles' motion for sanctions is hereby denied.

SO ORDERED.