Elliott v. Henry County, TN                CV-98-637-JD   08/27/99

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Sheila Elliott

    v.                                    Civ. No. 98-637-JD

Henry County, Tennessee, et al.



O R D E R

The plaintiff, Sheila Elliott, brought this action against the defendants, Henry County, Tennessee; Leon Williams; Strafford County, New Hampshire; Richard Cavanaugh; Robert Sinclair; Transcor America, Inc.; Marlene Vogel; Sylvester Rush;[1] Junious Hamm, Jr.; and unidentified agents, asserting claims under 42 U.S.C.A. §§ 1983 and 1988, and New Hampshire state law. Before the court is the motion to dismiss of defendants Henry County, Tennessee, and Leon Williams for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (document 30).[2]

---

[1]Sylvester Rush has been voluntarily dismissed from this case.

[2]In the present motion to dismiss (document no. 30), Henry County, Tennessee, and Williams (the "defendants") renew their earlier motion to dismiss (document no. 14) filed before the plaintiff amended her complaint. This order therefore resolves both of the defendants' pending motions.

## Background[3]

On November 22, 1995, the State of New Hampshire issued an arrest warrant for the plaintiff, Sheila Elliott.[4]  On December 22, 1995, Elliott was arrest by Paris, Tennessee, police pursuant to the arrest warrant.  She was held in custody from December 22, 1995, until December 31, 1995, in the Henry County, Tennessee, jail, under the supervision Leon Williams, the Sheriff of Henry County.  During her incarceration and her subsequent transportation Elliott was deprived of necessary medical

---

[3]The following does not constitute findings of fact of the court and is provided for context purposes only.  The events described are derived from the allegations of the amended complaint and reasonable inferences drawn therefrom.  See Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

[4]The warrant, as relevant, read:

To the sheriff of any county in this state, or his deputies or any police officer of any city or town within the state:

. . .

We command you to take the defendant, if found to be within your precinct, and bring him [sic] before the Rochester District Court.

Pl.'s Obj. to Defs.' Henry County and Leon Williams Mot. to Dismiss, Ex. A1.

The court also notes the inconsistent spelling of the plaintiff's name in this record.

treatments.

On December 28, 1995, a hearing was held at the General Sessions Court House, Henry County, Tennessee, concerning Elliott's extradition to New Hampshire. At the hearing Elliott signed a document governing the terms of her extradition to New Hampshire, which the court accepted and entered as an order. The document stated:

> Sheriff's Office
> Henry County, Tennessee
>
> I, Sheila E. Elliot, hereby certify that I freely and voluntarily agree to accompany New Durham New Hamphire [sic] P.D. as a prisoner of Strafford County, State of New Hampshire for the purposes of answering the charge of Interference of Custody there pending against me.
>
> Furthermore, I hereby waive all formality and am willing to return to Strafford Co. with the said officers without the Governor's requisition or other paper legally necessary to such cases and I Exonerate Henry County Sheriff's Dept. and all other officers of the said department, from any blame, compulsion, or interference in this connection.
>
> . . .
>
> 12/28/95 Def w/ advice of counsel states in open Court she desires to waive extradition & proceed to New Hampshire - Waiver accepted

Pl.'s Obj. to Defs.' Henry County and Leon Williams Mot. to Dismiss, Ex. A2.

On December 31, 1995, Henry County and Leon Williams, acting through deputies and jailers under their control and supervision,

3

delivered the plaintiff to Marlene Vogel, an employee of Transcor America, Inc., and an unidentified male employee of Transcor. Transcor America is a for profit business engaged in the business of transporting prisoners under contract with various governmental agencies.[5]

On December 31, 1995, Transcor's employee Vogel stripped Elliott of her clothes and had her stand naked, move her body parts, and exhibit herself. She was thereafter put into leg irons, handcuffs, and placed in a van in a small metal cage. The van seat did not have a seat belt or harness restraint. The plaintiff was unable to move her hands and feet, and was tossed about in the cage throughout the journey. Transcor agents refused to inform Elliott where she was, where she was going, what the date was, or when she might arrive in New Hampshire. Elliott was placed in a number of jails and holding cells in substandard conditions, and was required to sleep on floors of jails without proper bedding. Despite cold weather, the plaintiff was not allowed any additional clothing beyond the lightweight clothing she wore at the time of her arrest. During her transportation, the plaintiff's medical needs, including treatment for asthma, were unattended.

---

[5]The delivery apparently occurred in Henry County, Tennessee.

Transcor refused to allow the plaintiff to contact her family or an attorney and deprived her of her opportunity to be released upon bail. On January 7, 1996, Elliott arrived at and was released to the Strafford County House of Corrections. Again, she was stripped of her clothes, required to stand naked, move her body parts, and exhibit herself. Thereafter, each time the plaintiff was visited by an attorney, priest, health care provider, or family, or each time she attended court, the plaintiff was strip searched.

The charge upon which the plaintiff was arrested was eventually dismissed on the basis that the plaintiff did, in fact, have joint custody of her son.

In her amended complaint the plaintiff asserts violations of federal and state laws against all defendants in Count I (unreasonable search), Count II (unreasonable arrest); Count III (unlawful transportation); Count IV (violation of right to speedy trial, assistance of counsel, and bail); and Count V (violation of right to privacy). The plaintiff asserts further claims under state law against all defendants in Count VI (assault and battery); Count VII (negligence); Count VIII (negligent infliction of emotional distress); Count IX (intentional infliction of emotional distress); Count X (respondeat superior); and Count XI (negligent hiring, training, and supervision).

Discussion

The plaintiff has the burden of demonstrating facts sufficient to establish personal jurisdiction over the defendants.  See United Elec., Radio and Machine Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1090 (1st Cir. 1992) ("United Elec. I"), rev'd on other grounds, 987 F.2d 39 (1st Cir. 1993); Concord Labs., Inc. v. Ballard Medical Prods., 701 F. Supp. 272, 274 (D.N.H. 1988); Velcro Group Corp. v. Billarant, 692 F. Supp. 1443, 1446 (D.N.H. 1988).  Employing the prima facie analysis for determining personal jurisdiction, the court takes "specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and contrue[s] them in the light most congenial to the plaintiff's jurisdictional claim."[6]  Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n., 142 F.3d 26, 34 (1st Cir. 1998).  The court then adds "to the mix facts put forward by the defendants, to the extent that they are uncontradicted."  Id. In addition, the court construes all reasonable inferences in favor of the plaintiff.  See Velcro Group, 692 F. Supp. at 1446.

In this case the court's subject matter jurisdiction is

---

[6]The parties do not request a hearing on the issue of personal jurisdiction, nor is the record "rife with contradictions."  Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 676 (1st Cir. 1992).

predicated upon both the diversity of citizenship of the parties and the federal law under which various claims of the plaintiff arise.[7] "When the district court's subject-matter jurisdiction rests wholly or in part on the existence of a federal question, the constitutional limits of the court's personal jurisdiction are drawn in the first instance with reference to the due process clause of the fifth amendment." Lorelei Corp. v. Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991). The Fifth Amendment permits the exercise of personal jurisdiction over a defendant in a federal question case "'if that defendant has sufficient contacts with the United States as a whole.'" Id. (quoting Whistler Corp. v. Solar Electronics, Inc., 684 F. Supp. 1126, 1128 (D. Mass. 1988)). Furthermore, "sufficient contacts exist whenever the defendant is served within the sovereign territory of the United States." Id.

A statutory limitation to a federal court's exercise of personal jurisdiction exists under Federal Rules of Civil Procedure 4(f) and (e). Rule 4(f) confines the service of process issued by federal courts to the "territorial limits of the state in which the district court is held." Fed. R. Civ. P.

---

[7]The court notes the lack of complete diversity between the parties which, although not relevant to the present motion, potentially implicates the court's subject matter jurisdiction.

4(f) (West 1999).  Rule 4(e), however, authorizes extra-territorial service in instances where "a United States statute provides for such service," and, "[i]f no federal statute exists," in accordance with "the law of the state in which the district court sits."  Lorelei, 940 F.2d at 720.

In this case, as in Lorelei, no federal statute exists and the court defers to the state long-arm statute as authorized under Rule 4(e).  To exert jurisdiction over a defendant under a state's long-arm statute, the exercise of jurisdiction must comport with both the strictures of the state statute and with the Due Process Clause of the Fourteenth Amendment.  See id.

The defendants moving for dismissal are Henry County, Tennessee, and Williams ("defendants").  The New Hampshire long-arm statute governing individuals is New Hampshire Revised Statutes Annotated ("RSA") § 510:4(I) (Supp. 1994).  In Phelps v. Kingston, 130 N.H. 166, 171 (1987), the New Hampshire Supreme Court interpreted RSA § 510:4 to afford jurisdiction over foreign defendants "to the full extent that the statutory language and due process will allow."  See also, Estabrook v. Wetmore, 129 N.H. 520, 523 (1987) ("This court has consistently interpreted this statute to grant jurisdiction whenever the due process clause of the United States Constitution permits it.").

Under Tennessee law, Henry County is a corporation.  See

8

Tennessee Code Annotated ("TCA") § 5-1-103 (West 1999) ("Every county is a corporation and the members of the legislative body of each county assembled are the representatives of the county and authorized to act for it."). Furthermore, TCA § 5-1-105 (West 1999) provides that "[s]uits may be maintained against a county for any just claim, as against other corporations." RSA § 293-A:15.10 (1998) is the New Hampshire long arm statute governing service on foreign corporations, and it "includes no restriction upon the scope of jurisdiction available under state law and thus authorizes jurisdiction over such entities to the full extent permitted by the federal Constitution." Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995).

Although the defendants assert that the requirements of New Hampshire's long arm statutes are not met, the court assumes for the purposes of this order that New Hampshire statutory requirements are satisfied. See Massachusetts School of Law at Andover, 142 F.2d at 35 (addressing lack of jurisdiction under Due Process Clause rather than state long arm statute). Therefore, the court's personal jurisdiction analysis of the claims asserted against Henry County and Williams proceeds to a Due Process Clause analysis.

9

I.    General Jurisdiction

The plaintiff asserts that both general jurisdiction and specific jurisdiction exist over the defendants.  The exercise of general personal jurisdiction over a party is appropriate "when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state."  United Elec. I, 960 F.2d at 1088.  Again, it is the plaintiff's burden to affirmatively allege facts in support of personal jurisdiction.  See, Massachusetts School of Law, 142 F.3d at 34.

The plaintiff does not affirmatively allege that the defendants have engaged in any conduct, whether within New Hampshire or not, beyond those allegations immediately related to the claims in this case.  The plaintiff simply asserts that she may, with further discovery, be able to demonstrate that the defendants engage in systematic and substantial activity in New Hampshire when they enforce New Hampshire warrants and violate extradition waivers, but that it is unknown how often they engage in such activity.[8]  The record compels a conclusion that the plaintiff has not affirmatively alleged facts to support a

_____

[8]The plaintiff does not request that the court continue ruling on the motion pending further discovery.

finding that the defendants have engaged in continuous and systematic activity in New Hampshire.  The exercise of general jurisdiction over the defendants is therefore unwarranted.

II.  Specific Jurisdiction

The First Circuit uses a tripartite analysis to determine whether exercising specific personal jurisdiction over a defendant comports with the Due Process Clause.  See Ticketmaster, 26 F.3d at 206-12; United Elec. I, 960 F.2d at 1089.  The court first inquires whether the plaintiff's claims underlying the litigation directly arise out of, or relate to, the defendants' forum-state activity.  See Ticketmaster, 26 F.3d at 206.  Such activity must be an important or material element of proof of the plaintiff's case.  See United Elec. I, 960 F.2d at 1089.  The inquiry requires a showing of both cause in fact and legal cause, i.e., but-for causation and proximate causation. See Massachusetts School of Law, 142 F.3d at 35.  The court next inquires whether "the defendant's in-state contacts . . . represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." United Elec. I, 960 F.2d at 1089.  Finally, the court inquires

11

whether exercising jurisdiction would comport with fair play and substantial justice, which entails analysis of the "gestault" factors discussed more fully below. See Ticketmaster, 26 F.3d at 209-12. As a preliminary issue, the court must identify the conduct properly attributable and/or imputed to defendants Henry County and Williams. The plaintiff's claims arise from a continuum of events beginning with her allegedly unlawful arrest, search, and detention in Tennessee, her subsequent placement with and transport by defendant Transcor to Strafford County, New Hampshire, and conduct which occurred upon her arrival at and during her confinement in the Strafford County House of Corrections.

Although the plaintiff alleges in her complaint that Transcor was at all times an agent of Henry County and Williams, she does not appear to argue in her revised memorandum of law that personal jurisdiction over Williams and Henry County is warranted on the basis of such an agency relationship. In any event the court concludes that the actions of Transcor cannot be imputed to Henry County or Williams on an agency theory in this case.

The Restatement (Second) of Agency (1958) § 1 states that

Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his

12

control, and consent by the other so to act. It is a "legal concept which depends upon the existence of required factual elements" including manifestation by the principal that the agent shall act for him, the agent's acceptance, and their agreement that "the principal is to be in control of the undertaking." Id. cmt. b. Both Tennessee and New Hampshire follow the Restatement in this regard. See Singh v. Therrien Management Corp., 140 N.H. 355, 358 (1995); Investors Syndicate v. Allen, 198 Tenn. 288, 296 (1955); see also, Haskins v. Yates, Civ. No. ------, 1998 WL 80967 at *4 (Tenn. Ct. App. Aug. 5, 1988).

The record does not indicate that Williams or Henry County agreed to have Transcor act as it agent. Nor does the record indicate that Transcor was subject to the control of Henry County or Williams after it had acquired custody of the plaintiff. Indeed, the documents filed by the plaintiff indicate that if Transcor was acting as an agency of any party, it would be Strafford County. Transcor's contract, titled "Prisoner's Receipt," states that Marlene Vogel, an employee of Transcor, is "the duly appointed agent for . . . Strafford County . . ." and the assignor is identified as Richard Cavanaugh. Pl.'s Obj. to Defs'. Henry County and Leon Williams Mot. to Dismiss, Ex. A3.

Transcor's apparent agency relationship with Strafford

13

County is consistent with the provisions of the Uniform Criminal Extradition Law, which both Tennessee and New Hampshire have enacted. See RSA ch. 612; TCA tit. 40 ch. 9 (1998). These statutes provide for the arrest and delivery of a person to the duly authorized agent of the demanding state. See, e.g., RSA § 612:8 (1998) (officers authorized "to deliver the accused, subject to the provisions hereof, to the duly authorized agent of the demanding state."); TCA § 40-9-118 (1998) (same). RSA § 612:10 and TCA § 40-9-119 provide terms controlling the delivery of the person to the agent "appointed" to receive the person. Transcor's contract specifically provides that it is the "duly appointed states agent for" Strafford County.

The court therefore concludes that the conduct properly attributable to Henry County and Williams in considering the exercise of personal jurisdiction over them is limited solely to the conduct of Henry County, Williams, and their deputies or employees. Indeed, despite her allegations of an agency relationship, in her arguments in support of personal jurisdiction the plaintiff relies on conduct that occurred in Tennessee prior to the transfer of custody of the plaintiff to Transcor.[9]

---

[9]The plaintiff asserts in the alternative that Transcor was the agent of Cavanaugh and Strafford County.

14

A.    Relatedness

"In order for the extension of personal jurisdiction to survive constitutional scrutiny, a claim must 'arise out of, or be related to, the defendant's in-forum activities.'" Massachusetts School of Law, 142 F.2d at 35 (quoting Ticketmaster, 26 F.3d at 206).  In cases where tort claims are asserted, First Circuit jurisprudence "customarily look[s] to whether the plaintiff has established 'cause in fact (i.e., the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action).'"  Id. (quoting United Elec. I, 960 F.2d at 1089).

The plaintiff argues that her initial arrest and detention in Tennessee pursuant to a New Hampshire warrant and the defendants' alleged subsequent arrangement in Tennessee for her transport back to New Hampshire is sufficient to meet the requirements of the "relatedness" prong of the First Circuit's Due Process analysis.  Yet none of this conduct occurred in New Hampshire.  Moreover, the locus of her injuries or harm, inter alia, her alleged unlawful arrest, detention, and search, her assault and battery, and the invasion of her privacy, occurred in Tennessee where she was subjected to the acts attributable to Williams and Henry County.  See Ziegler v. Indian River County,

15

64 F.3d 470, 474 (9th Cir. 1995) (harm is felt where arrest occurred). The mere fact that the defendants acted pursuant to a New Hampshire warrant or that they detained a New Hampshire resident does not suffice to subject them to the personal jurisdiction of this court. See Williams v. Cook County Sheriff's Dept., No. 93 C 212, 1995 WL 75386, at *2 (N.D. Ill. Feb. 22, 1995); Cook v. Holzberger, 788 F. Supp. 347 (S.D. Ohio 1992). Nor is the act of placing a phone call to New Hampshire to notify authorities of the apprehension of the plaintiff, assuming this occurred, an adequate basis for asserting jurisdiction. See Williams, 1995 WL 75386 at *2 (and cases cited) ("a phone call by a law enforcement official from one state notifying a law enforcement agency in another state of the apprehension of a wanted person does not give rise to minimum contacts sufficient to subject the law enforcement officer to personal jurisdiction").

The court concludes, therefore, that the plaintiff's claims and the underlying conduct of the defendants is not sufficiently related to the State of New Hampshire to support the exercise of personal jurisdiction over them. See, e.g., Massachusetts School of Law, 142 F.3d at 35, 36. Similarly, the plaintiff has failed to meet her burden of demonstrating purposeful availment or that jurisdiction is warranted given consideration of the "gestault

16

factors."

B.  Personal Availment

The "[f]unction of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's random, isolated, or fortuitous contacts with the forum state."  Sawtelle, 70 F.3d at 1391 (quotations and citations omitted).  The First Circuit's analysis of purposeful availment considers the voluntariness of the defendant's relevant actions, and whether the court's exercise of jurisdiction over the defendant would be foreseeable.  See id., 70 F.3d at 1391-94.

The plaintiff argues that the defendants purposefully directed their activities at a New Hampshire resident, were contacted by a New Hampshire County Sheriff's Department with which they made transportation arrangements, and then contacted the New Durham Police Department to obtain a copy of the warrant. The plaintiff has cited no precedent to support her argument that such conduct constitutes purposeful availment sufficient to support personal jurisdiction.  Indeed, other courts that have addressed similar factual scenarios have concluded just the opposite.  See Williams v. Garcia, 569 F. Supp. 1452, 1456-57 (E.D. Mich. 1983); see also, Williams v. Cook County Sheriff Dept., 1995 WL 75386 at *2.

17

Although the plaintiff alleges that the defendants purposefully directed their actions at a New Hampshire resident and subsequently facilitated her transfer to the agent of Strafford County, all of this conduct occurred in Tennessee and had its injurious effect in Tennessee. The only possible conduct through which the defendants purposefully and affirmatively availed themselves of New Hampshire could be telephone calls made by the defendants to New Hampshire authorities. The plaintiff's allegations in this regard are vague. Assuming, however, that the defendants phoned New Durham and Strafford County authorities to inform them that the plaintiff was in their custody and to facilitate the delivery of the plaintiff to Strafford County's agent in Tennessee, such conduct is not an adequate basis for jurisdiction. See Williams v. Garcia, 569 F. Supp. at 1457; see also, Williams v. Cook County, 1995 WL 75386 at *2.

The court cannot conclude that the exercise of jurisdiction in this state would be foreseeable. There is no indication that the defendants have entered this state, have engaged agents in this state, or have engaged in conduct out of this state which caused injury within the state.


C.  Gestault Factors

Finally, the court considers whether exercising jurisdiction

18

would comport with fair play and substantial justice.  See Ticketmaster, 26 F.3d at 209-10.  In this inquiry the court considers five "gestalt" factors:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Id. at 209.

The First Circuit has noted that "the concept of burden is inherently relative, and, insofar as staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, [] this factor is only meaningful where a party can demonstrate some kind of special or unusual burden."  Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994).  In this case there is no special or significant burden.

Although New Hampshire has an interest in redressing harm done to its residents, all of the acts properly attributed to Williams and Henry County, and the injuries flowing therefrom, occurred outside the state of New Hampshire.  In such circumstances, New Hampshire's interest in adjudicating the claims asserted against Williams and Henry County is greatly diminished.  See Sawtelle, 70 F.3d at 1395 (this factor cuts against jurisdiction when "the acts comprising the defendants'

19

alleged negligence occurred almost entirely outside of New Hampshire."). The plaintiff's choice of forum is presumably the most convenient and "must be accorded a degree of deference." Id. However, it also appears that many witnesses may reside in Tennessee and other states between Tennessee and New Hampshire. See Ticketmaster, 26 F.3d at 211 (considering location of witnesses).

Finally, although the court does not find that the administration of the judicial system significantly affects the analysis in this case, public policy weighs heavily in favor of not exercising jurisdiction. Should the court exercise personal jurisdiction over the defendants in this case, there would be few, if any, instances where law enforcement officers and police departments would not be subject to the personal jurisdiction of out of state courts simply because they assisted in extradition proceedings involving that state's residents or extradition requests. See Cook, 788 F. Supp. at 351.

## Conclusion

In light of the above discussion, the court concludes that the exercise of personal jurisdiction over the defendants would violate the defendants' due process rights. The court therefore grants the renewed motion to dismiss for lack of personal jurisdiction of Henry County, Tennessee, and Williams (document

20

no. 30), as well as the initial motion to dismiss (document no. 14).

SO ORDERED.

_____
Joseph A. Diclerico, Jr.
District Judge

August 26, 1999

cc:   James W. Craig, Esquire
      Peter G. Beeson, Esquire
      James H. Drescher, Esquire
      Michael D. Ramsdell, Esquire
      Brian T. Tucker, Esquire